UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
PAGANE MARITIME LTD.

                Plaintiff,

  v.

GLINGROW HOLDING LTD. and
RIAS TRADING,

                Defendants.
------------------------------------------------------------ X

ECF CASE

07 Civ. 10726 (PKL)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RIAS TRADING'S
MOTION TO DISMISS COMPLAINT AND VACATE ATTACHMENT**

REED SMITH LLP
599 Lexington Avenue
New York, New York
(212) 521-5400

Attorneys for Defendant
Rias Trading

Of Counsel:
Wendy H. Schwartz (WS-1862)

## PRELIMINARY STATEMENT

Pursuant to Rule E(8) of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules"), defendant Rias Trading ("Rias"), makes this restricted appearance for the sole purpose of moving to dismiss this action against it and to obtain vacatur of the attachment of Rias' assets by Pagane Maritime Ltd. ("Plaintiff" or "Pagane"). As conceded by Plaintiff, Rias is not a party to the agreement giving rise to the alleged liabilities at issue. Plaintiff has not alleged any other basis upon which it may attach Rias's assets. Therefore the Rule B attachment of assets of Rias is improper, and the complaint as to Rias should be dismissed.

## STATEMENT OF FACTS

### A. Rias

Rias is a Swiss company based in Lausanne, Switzerland, which engages in the international trade of fertilizer, food products, especially cereals, and meat and dairy products. Declaration of Sergey Chumak, dated January 10, 2008 ("Chumak Decl.") ¶¶ 4, 5.

### B. The Underlying Events, the Complaint and the Amended Complaint

Rias desired to ship grain from the Ukraine across the Black Sea to Aqaba, Jordan, and contracted with Defendant Glingrow Holding Ltd. ("Glingrow") to charter a vessel for this purpose. Chumak Decl. ¶ 9.

Glingrow contracted with Bulcom Ltd to charter a vessel, the M/V Pagane (the "Vessel"), to transport the grain and the grain was loaded onto the Vessel. Chumak Decl. ¶ 10. Plaintiff alleges that it is the disponent owner of the Vessel, although it is not named in the contract with Glingrow. Amended Verified Complaint ¶ 2. Rias is not a party to the charter party agreement

1

between Bulcom Ltd. and Glingrow (the "Charter Agreement"), Amended Verified Complaint, Chumak Decl. ¶ 13, and is not a party to any contract with Pagane. Chumak Decl. ¶ 14.

A dispute apparently arose between Plaintiff and Glingrow regarding fees for use of the Vessel under the Charter Agreement. Chumak Decl. ¶ 16. This dispute is the subject of arbitration in London. Chumak Decl. ¶ 18. Rias is not a party to that arbitration. Chumak Decl. ¶ 18.

C.  **The Complaints and the Attachment Orders**

This action was commenced on or about November 30, 2007 by the filing of a Verified Complaint (the "Complaint") against Glingrow and Rias by Bulcom Ltd., along with an Order for Maritime Attachment and Garnishment under the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (the "Supplemental Rules").

The Complaint alleged damages of $1,433,583.10 attributable to an alleged breach of the Charter Agreement. The Complaint did not allege that Rias was a party to the Charter Agreement, that it was a signator or guarantor of the Charter Agreement or that it had any obligations under the Charter Agreement. The Complaint alleged no direct claim against Rias by Bulcom Ltd. whatsoever.

Pursuant to Rule B(1) of the Supplemental Rules, an *ex parte* Order directing the Clerk to Issue Maritime Process was issued on November 30, 2007 by Judge John F. Keenan, permitting the attachment of property of Defendants (the "First Attachment Order").

On December 20, 2007, this Court Ordered a Consent Order, stipulated to and agreed to by the parties, instructing garnishee banks that had attached funds under the First Attachment Order to release the attached funds. The Consent Order also stated that "[t]he payment of the

2

released funds by the garnishee bank(s) shall not be subject to any further attachment in New York after those finds are released by the garnishee bank(s)."

Also on December 20, 2007, an Amended Verified Complaint was filed (the "Amended Complaint"), substituting Pagane as Plaintiff. The Amended Complaint alleges that Pagane is the disponent owner of the Vessel. It also alleges many of the same facts as the Complaint, including that damages, albeit in a lesser amount of $688,530.51 due to partial payment, are owed to Plaintiff as a result of alleged breaches of the Charter Agreement by Glingrow.

The Amended Complaint admits that Rias is not a party to the Charter Agreement and that Rias had no formal relationship to the Charter of the Vessel. Amended Complaint ¶16.

The Amended Complaint does not allege that Rias is a signator or guarantor of the Charter Agreement, that it had any obligations under the Charter Agreement, that Rias has any contractual relationship with Plaintiff of any kind, or that Rias has harmed or damaged Plaintiff in any way. The Amended Complaint alleges no claim against Rias whatsoever.

Instead, the Amended Complaint merely alleges that Rias "paid initial hiring owed to Plaintiff from Glingrow," and that "[i]t is not common practice . . . for an independent company to pay another's debt. . . ." Amended Complaint ¶¶16, 17.

Apparently, Rias is named as a defendant solely upon Plaintiff's unsupported speculation, asserted upon information and belief with no supporting facts, that Rias is "an alias, partner, joint venturer and/or paying or receiving, agent of Glingrow" and that Rias acts as "a paying agent, and/or receiving agent, or arranges for other non-parties to satisfy the debts and obligations of Defendant Glingrow, and/or receive payments being made to Defendant Glingrow." Amended Complaint ¶¶ 4 and 15. While it uses the term "alias," Plaintiff has not alleged alter ego liability

3

on the part of Rias, let alone any shred of evidence that could support a *prima facie* showing that Rias could be alter ego of Glingrow.

According to the docket, on December 28, 2007, a Maritime Attachment and Garnishment issued as to Glingrow and Rias in the amount of $688,530.51 (the Second Attachment Order"). Chumak Decl., Exh. D.

### ARGUMENT

### POINT I

### THE COMPLAINT SHOULD BE DISMISSED AND THE ATTACHMENT ORDER SHOULD BE VACATED BECAUSE PLAINTIFF MAKES NO SHOWING OF A PRIMA FACIE CASE AGAINST RIAS

Pursuant to Rule E(4)(f) of the Supplemental Rules:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

*Id.* To underscore the meaning of "prompt," Local Admiralty Rule E.1. requires such hearing to be conducted "by a judicial officer within three court days, unless otherwise ordered." *Id.* "[T]he party obtaining the attachment order bears the burden at the subsequent hearing of justifying it." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 384 F.Supp.2d 726, 728 (S.D.N.Y. 2005). *See also HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas Y Oleicos S.A. De C.V.*, 2005 WL 1036127, at *3 (S.D.N.Y. May 4, 2005) (Buckwald, J.) ("[w]hen the validity of an attachment is challenged, the burden is on plaintiff to show why the attachment should not be vacated"). This burden is only satisfied "when the plaintiff makes a prima facie showing that he has a maritime claim against *the defendant* in the amount sued for and the defendant is not present in the district." *Deiulemar Compagnia Di Navigazione v. Dabkomar Bulk Carriers Ltd.*, No. 05 Civ. 81 99, 2005 U.S. Dist. LEXIS 40783, at *8 (S.D.N.Y. Dec. 12,

2005) (citations omitted)(emphasis added). If a plaintiff fails to demonstrate it has met the requirements of Rules B and E, the district court must vacate the attachment. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006).

Plaintiff does not make a prima facie showing of any claim against Defendant Rias. First, it is clear from the face of the Amended Complaint that Rias is neither a party, nor a guarantor, to the Charter Agreement. Plaintiff admits as much in the Amended Complaint, at ¶16. Thus, there is no direct claim against Rias for breach of the Charter Agreement.

Rather, it appears that Rias has been named as a defendant in this action simply because Rias paid some monies to Bulcom Ltd. at the direction of Glingrow. Yet the mere payment of funds by Rias to Bulcom Ltd. (or to Plaintiff, which did not occur), pursuant to Rias' contract with Glingrow does not provide Bulcom or Plaintiff with a claim against Rias. Rias is obligated to pay only at Glingrow's direction.

The facts here are similar to those in *Deiulemar Compagnia*, detailed in a Report and Recommendation by Magistrate Judge Pitman, except that the connections between Rias and the contract in this action are even more non-existent than those alleged in *Deiulemar*. There, as here, plaintiff brought suit alleging a breach of an agreement to charter a vessel and seeking an Order of Maritime Attachment. 2005 U.S. Dist LEXIS 40783 at *2-3. In addition to naming the contracting parties, plaintiff also named Dabkomar Shipping AS ("Dabkomar AS") as a defendant, alleging that Dabkomar AS, through its agent, agreed to guarantee the primary defendant's obligations under the agreement. *Id.* at *3. Dabkomar AS moved to dismiss the complaint and to vacate the attachment, arguing that plaintiff could not maintain its burden of proving that Dabkomar AS had agreed to guarantee the primary defendant's obligations. *Id.*, at *5. The Court agreed, finding that even though Dabkomar AS - unlike Rias here - was named in

5

the charter, the person who negotiated on its behalf was not its agent and had no authority to bind it. *Id.*, at *24. The Court thus granted the motion and vacated the attachment, holding:

> Because plaintiff cannot prevail on its guarantee claim against Dabkomar AS, it cannot establish a prima facie admiralty claim and cannot meet its burden under Admiralty Rule E(4)(f).

*Id.* at *27. *See also Madredeus Shipping Co. Ltd. v. Century Bridge Chartering Co. Ltd.*, 2000 U.S. Dist. LEXIS 20874 (S.D. Fla. Feb. 11, 2000) ("the court finds that [plaintiff] has failed to state a valid in personam claim against [defendant], and therefore cannot support a Rule B attachment. . . ")  This is equally true here, where Rias is not a party to nor a guarantor of the Charter Agreement.

## POINT II

### PLAINTIFF DOES NOT AND CANNOT SHOW ALTER EGO LIABILITY OF RIAS

Although not clearly alleged, Plaintiff may be seeking to claim against Rias as a defendant based on some alter ego theory of liability by alleging that Rias is an "alias" of Glingrow." Amended Complaint ¶¶ 4, 15.

Even if taken as true (solely for purposes of this motion), plaintiff's conclusory allegations insufficient on their face to state a claim for alter ego liability. In addition to the "alias" claim, Plaintiff alleges, with no support, that Rias is a "partner, joint venturer and/or paying or receiving, agent of Glingrow" and that Rias acts as "a paying agent, and/or receiving agent, or arranges for other non-parties to satisfy the debts and obligations of Defendant Glingrow, and/or receive payments being made to Defendant Glingrow." Amended Complaint ¶¶ 4 and 15.  These allegations do not give rise to alter ego liability.  Plaintiff's sole factual allegation, that Rias "paid initial hiring owed to Plaintiff from Glingrow" (Amended Complaint ¶ 16) likewise does not demonstrate that Rias is anyone's alter ego. Thus Plaintiff fails to establish

a prima facie case on this issue.

Federal courts sitting in admiralty apply federal common law when examining corporate identity. *Status Int'l S.A. v. M&D Maritime Ltd.*, 994 F. Supp. 182, 186 (S.D.N.Y. 1998) (citing *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 342 (2d Cir. 1986)). Such claims should be reviewed with caution as the federal courts are hesitant to pierce the corporate veil. *Status Int'l*, 994 F.Supp. at 186. "Federal common law allows piercing of the corporate veil where (1) a corporation uses its alter ego to perpetrate a fraud or (2) where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own." *Status Int'l*, 994 F. Supp. at 186 *(citing Dow Chemical Pacific Ltd.* 782 F.2d at 342; *Kirno Hill Corp. v. Holt,* 618 F.2d 982, 984-85 (2d Cir. 1980)).. "Actual dominion, rather than the opportunity to exercise control, must be shown." *Tide Line, Inc., v. Eastrade Commodities, Inc.*, 2006 U.S. Dist. LEXIS 95870 at *34. (S.D.N.Y. 2006) (quotations omitted).

"When assessing whether a plaintiff has adequately plead an alter ego theory of liability, courts consider a number of factors, including whether the plaintiff has alleged that the alter egos intermingled funds; overlapped in ownership, officers, directors, and personnel; shared common office space, addresses and telephone numbers; and/or whether payments or guarantees of one corporation's debts have been paid or held by the other." *Fesco Ocean Mgmt. v. High Seas Shipping Ltd.*, 2007 U.S. Dist. LEXIS 19970 (S.D.N.Y. 2007) (citing *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001)).

Plaintiff's allegation that Rias "paid initial hiring owing to Plaintiff from Glingrow" and that "it is not common . . .for an independent company to pay another company's debt," Complaint ¶16-17, does not come close to satisfying this standard.

7

Plaintiff's remaining allegations regarding alias, partner, joint venture and agency are made purely on information and belief, with no supporting factual basis, and in any event fall far short of meeting Plaintiff's burden to allege sufficient facts to support an inference that Rias has so dominated and disregarded Glingrow's form that Rias, rather than Glingrow, conducted Glingrow's business. *See, e.g., Dolco Investments, Ltd. v. Moonriver Development, Ltd et al.*, 486 F. Supp. 2d 261, 272 (S.D.N.Y. 2007) (finding that Dolco had failed to meet this burden because it had failed to include anything other than conclusory allegations that another defendant exercised domination over Moonriver and merely alleged that the other defendant paid Moonriver's debts to Dolco "from time to time."). "Under the heightened standard of Fed. R. Civ. P. Supp. Rule E(2)(a), more is required." *Id.* Conclusory allegations such as those made by Plaintiff are insufficient, as a matter of law, to pierce the corporate veil. *Stevedoring Services of America v. Ancora Transports*, N. K, 59 F.3d 879, 883 (9th Cir. 1995) (dismissing alter ego argument and vacating attachment where "[plaintiff] offered little more than bare assertions that [defendant] was an alter ego of [the contractual party]"); *Status Int'l S.A.*, 994 F. Supp. at 186 (allegation that one entity is "wholly owned" by another is insufficient to overcome the presumption of corporate separateness, and no other facts were stated).

## CONCLUSION

For the foregoing reasons, the Complaint against Rias should be dismissed and the attachment order vacated as to Rias, along with the granting of costs and disbursements and such other and further relief as the Court deems just and proper.

Dated: New York, New York
      January __, 2008

                              REED SMITH LLP

                              By: _____
                                   Wendy H. Schwartz (WHS-1862)
                                   599 Lexington Avenue
                                   New York, NY 10022-7650
                                   Telephone:  212.521.5400
                                   Facsimile:  212.521.5450

                                   Attorneys for Defendant
                                   Rias Trading