LENNON, MURPHY & LENNON, LLC
Attorneys for Plaintiff
PAGANE MARITIME LTD.
The Gray Bar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
Telephone:   (212) 490-6050
Facsimile:    (212) 490-6070
Kevin J. Lennon
Charles E. Murphy

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PAGANE MARITIME LTD.,                          :        07 CV 10726  (PKL)
                                                                    :
                    Plaintiff,                              :        ECF CASE
                                                                    :
     - against -                                            :
                                                                    :
GLINGROW HOLDING LTD. and               :
RIAS TRADING,                                           :
                                                                    :
                    Defendants.                         :
------------------------------------------------------------X

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT RIAS TRADING'S MOTION TO DISMISS COMPLAINT AND VACATE ATTACHMENT

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ..........................................................................................................3

ARGUMENT.................................................................................................................................4

POINT ONE
PAGANE HAS SATISFIED ITS BURDEN OF PROOF UNDER SUPPLEMENTAL
ADMIRALTY RULES B AND E(4)(f) ......................................................................................4

POINT TWO
RIAS SHOULD BE EQUITABLY ESTOPPED FROM CONTESTING THE CONSENT
ORDER AND THE AGREEMENT FOR THE ATTACHED FUNDS TO SERVE AS
SECURITY IN LONDON ..........................................................................................................10

POINT THREE
RIAS MOTION TO DISMISS PLAINTIFF'S COMPLAINT IS DEFECTIVE.............................12

CONCLUSION ...........................................................................................................................13

## **PRELIMINARY STATEMENT**

Pagane's attachment should be sustained because this Court validly granted an *ex parte* attachment Order pursuant to Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure and in accord with the United States Court of Appeals for the Second Circuit's decision in Aqua Stoli Shipping Ltd. v. Gardner Smith, 460 F.3d 434 (2d Cir. 2006). The Order was proper because: (1) Pagane has a valid *prima facie* admiralty claim against Glingrow and Rias arising from a breach of a charter party contract dated October 17, 2007; (2) neither Defendant can be "found" within the Southern District of New York; (3) the Defendants have property interests in the $402,736.79 that has been restrained within the District; and (4) there is no statutory bar to the attachment.

As a result, and for the further reasons set forth below, Plaintiff has satisfied its burden under Rule E(4) to show cause why its attachment should not be vacated. The burden of proof now shifts to Defendant Rias Trading ("Rias") establish one of the limited equitable grounds for vacatur. As will be demonstrated herein. Rias cannot satisfy its burden of proof to justify vacatur. Further, the facts and circumstance of this case warrant a finding by this Court that Rias should be equitably estopped from challenging the attachment in respect of the attached funds governed by the Consent Order.

Judge Preska summarized the state of the law in this regard in upholding a maritime attachment in Transportes Navieros Y Terrestes, S.A. de C.V. v. Fairmount Heavy Transport, N.A., 2007 U.S. Dist. LEXIS 50260, 2007 AMC 1993 (S.D.N.Y 2007). Judge Preska held that "[a]lthough the Court of Appeals has not stated exactly what a plaintiff must show to make out a 'prima facie admiralty claim,' many district courts that have examined this issue since Aqua Stoli have adopted the 'limited inquiry contemplated by Aqua Stoli' and have adopted a basic

definition of the term prima facie." *Id.* In her decision, Judge Preska re-confirmed that a plaintiff need not prove its case or present evidence at a Rule E(4)(f) hearing because a proper Verified Complaint is all that is required to satisfy Rule B and to withstand a motion to vacate attachment. The Transportes Navieros Y Terrestes court held as follows:

> The Court of Appeals in Aqua Stoli stated that "our conclusion leads us to reject the reasoning of the more recent district court decisions that have engaged in a broader Rule E(4)(f) inquiry" including a district court vacatur inquiry that would impose a "fact-intensive inquiry" into a Rule E(4)(f) vacatur hearing. 460 F.3d at 445, 447.
>
> In examining Aqua Stoli, Chief Judge Wood stated that the "Court of Appeals' holding and rationale in Aqua Stoli Shipping Ltd. also strongly undermine the standard, stated in a number of cases that the hearing pursuant to Supplemental Rule E (4)(f) is intended to make a preliminary determination whether there were reasonable grounds for issuing the warrant of the attachment." Tide Line, Inc. v. Eastrade Commodities, Inc., No. 06-1979, 2006 U.S. Dist. LEXIS 95870 at *14 (S.D.N.Y. Aug. 15, 2006) (internal citations and quotations omitted). Although Aqua Stoli did not explicitly address the "probable cause" or "reasonable grounds" standard, which would place a higher burden of proof on a plaintiff to justify an attachment, the Aqua Stoli Court did state that a fact-intensive inquiry is "improper because Rule B specifies the sum total of what must be shown for a valid maritime attachment" and that implies that the "probable cause" or "reasonable grounds" standard is improper insofar as it purports to go beyond this limited inquiry. Tide Line Inc., 2006 U.S. Dist. LEXIS 95870 at *15 (quoting Aqua Stoli, 460 F.3d. at 445). Using the less burdensome prima facie standard, Judge Wood explained that ***a proper Verified Complaint is all that is required to satisfy Rule B and to prevail against a Rule E(4)(f) motion to vacate. Id. at \*15-16 ("Thus to show that it has a prima facie claim, a plaintiff seeking a maritime attachment need not provide any supporting evidence; its complaint should suffice.)*** Furthermore Aqua Stoli implies that a plaintiff is likewise not required to provide evidence showing that it has a claim against defendant, to carry its burden under Supplemental Rule E(4)(f).")(internal footnote omitted).
>
> Thus, maritime plaintiffs are not required to prove their cases at this stage of a Rule E(4) hearing. SPL Shipping Ltd., 2007 WL 831810 at *2 (internal citation omitted). [Plaintiff] TNT submitted a Verified Complaint in which it alleged a proper admiralty claim against [defendant] FHT and fulfilled all of the other filing and service requirements of Rules B and E. Based on the prima facie standard approved by the Court of Appeals and employed by other district courts, TNT's maritime attachment satisfies the requirements of the admiralty rules that govern maritime attachment matters and is thus sufficient.

2

*Id.* (emphasis added).

The limited inquiry under Rias' Rule E(4)(f) application is whether Pagane's Verified Complaint alleged a legally sufficient maritime claim for the purpose of an attachment under Supplemental Rule B. Notwithstanding Rias' contrary claims, it is clear that the Verified Complaint alleged a legally sufficient maritime claim and the attachment should be maintained.

## STATEMENT OF FACTS

Rias has informed the Court concerning some facts and circumstances relevant to its motion to vacate. Importantly, Rias acknowledges the existence of the Consent Order (*see* Declaration of Sergey Chumak at ¶21, Exhibit B). Most importantly, the Consent Order, and the agreement which underpins the Consent Order, cuts off any right Rias may have had to challenge the attachment of these funds. Notably, Rias' motion papers are utterly silent regarding the basis upon which it believes the Consent Order was submitted to the Court nor any argument as to why the Court's Order does not now preclude it from challenging the attachment of the funds covered by the Consent Order.

To fill the gaps left by Rias in its motion papers, Pagane herein submits the Declarations of Matthew Moore and Kevin J. Lennon. These Declarations abundantly demonstrate that Glingrow and Rias agreed to have all funds restrained in New York as of the time of the Consent Order released from attachment and sent to London to serve as security for Pagane's claims. The evidence shows that:

- Glingrow and Rias acted as one, through one lawyer in London, and one lawyer in New York;
- Rias never reserved any rights in respect of the funds attached in New York prior to the Consent Order being submitted to, and eventually signed by, the Court;
- at no time was there ever any discussion that the attached funds should be divisible as between Glingrow and Rias; and rather, all funds were to be remitted to London to serve as security; and

- in accord with the agreement underpinning the Consent Order, Pagane twice ceased and desisted service of its attachment Order thereby allowing Glingrow and Rias unfettered access to the New York banking system to carry out their commercial banking transactions.

In light of the foregoing, it is respectfully submitted that RIAS' motion should be denied. Plaintiff has established the predicate for a maritime attachment under Rule B. Further, Rias should be equitably estopped from arguing that its funds restrained in the District should not be remitted to London to stand as security for Pagane's claims. Additionally, even if the Court does not equitably estop Rias from raising this argument, Pagane's Complaint is sufficient to withstand the challenge under Rule E(4)(f).

## ARGUMENT

### POINT I

### PAGANE HAS SATISFIED ITS BURDEN OF PROOF UNDER SUPPLEMENTAL ADMIRALTY RULES B AND E(4)(f)

Pagane has carried its burden to demonstrate that this Court's attachment order was validly issued. Under Supplemental Rule B, an order of maritime attachment must issue upon a minimal prima facie showing provided that the defendant cannot be found within the district in which the assets are sought to be attached. Supplemental Rule B provides, in relevant part:

> If a defendant is not found within the district…, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishees named in the process. The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

4

Fed. R. Civ. P. Supp. Rule B(1). As recently summarized by the Court of Appeals for the Second Circuit:

> To begin the process, a plaintiff must file a verified complaint praying for an attachment and an affidavit stating that, to the best of the plaintiff's knowledge, the defendant cannot be found within the judicial district. [Fed.R.Civ.P. Supp. Rule B(1).] If the plaintiff's filings comply with these conditions, the court must enter an order authorizing the attachment, which the plaintiff may then serve on any persons in possession of the defendant's property located within the district. The order of attachment may be requested and granted ex parte, though notice of the attachment to the defendant via appropriate service is required. Id. Supp. Rules B(2), E(3).

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 438 (2d Cir. 2006). "The power to grant attachments in admiralty is an inherent component of the admiralty jurisdiction given to the federal courts under Article III of the Constitution," and its "historical purpose has been two-fold: first, to gain jurisdiction over an absent defendant; and second, to assure satisfaction of a judgment." Id. accord Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 268 (2d Cir. 2002).

Furthermore, in respect of the right to challenge the validity of a maritime attachment under Supplemental Rule E(4)(f), the Second Circuit held in Aqua Stoli that a plaintiff need only demonstrate that the attachment order was properly issued, *i.e.*, (1) that it has a valid *prima facie* admiralty claim; (2) the defendant cannot be found within the district; (3) the defendant's property may be found in the district; and (4) there is no statutory bar. Once the plaintiff has made such a showing, a properly issued attachment order may be vacated only if the challenger can prove any of four limited circumstances, none of which RIAS has proved in this case.

This standard, first announced by the Second Circuit in 2006, was more recently restated and followed by Chief Judge Wood in Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870, 2007 AMC 252 (S.D.N.Y. 2006) where the court held:

> Furthermore, "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (Supplemental Rule E(4)(f)"). The Court of Appeals for the Second Circuit has recently, for the first time, spoken "directly on the showing necessary to vacate a maritime attachment under Rule E," Aqua Stoli Shipping Ltd., 2006 WL 2129336, at *4, 2006 U.S. App. LEXIS 19302, at *12 – holding that "once a plaintiff has carried his burden to show that his attachment satisfies the requirements of Supplemental Rule B, a district court may vacate an attachment only upon [certain] circumstances," which "can occur where 1) the defendant is present in a convenient adjacent jurisdiction; 2) the defendant is present in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for a judgment." Id., 2006 WL 2129336, at *1, 2006 U.S. App. LEXIS 19302, at *2.

Id. at *8. More specifically, in Aqua Stoli the Court of Appeals held at greater length that while it is a plaintiff's burden to prove that it has complied with the technical requirements of Rule B, it is the moving party's burden to prove one of the limited equitable bases for vacatur. The Court of Appeals held as follows:

> We therefore hold that, in addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E. We believe vacatur is appropriate in other limited circumstances. While, as we have noted, the exact scope of a district court's vacatur power is not before us, we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise. n.5.
>
> n.5 Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rule B and E. Although Rule E does not explicitly mention a district court's equitable power to vacate an attachment or who bears such a burden, former Local Rule 12

6

> required the defendant to establish any equitable grounds for vacatur, and we believe that defendants still bear that burden under the Supplemental Rules.

Aqua Stoli, 460 F.3d at 445. Former Local Rule 12, to which the Second Circuit cited in note 5 of Aqua Stoli, provided as follows:

> Where property is arrested or attached, any person claiming an interest in the property arrested or attached may, upon showing of any improper practice or a manifest want of equity on the part of the plaintiff, be entitled to an order requiring that plaintiff to show cause why the arrest or attachment should not be vacated or other relief granted, consistent with theses rules or the supplemental rules.

Id.

The Second Circuit emphasized that "Rule B specifies the sum total of what must be shown for a valid maritime attachment." Id. at 447. Moreover, the Second Circuit held that upon the plaintiff's showing that the attachment was properly ordered, and that it complied with the requirements of Rules B and E, the "defendant bears the burden of "establish[ing] any equitable grounds for vacatur." Id. at 436. As explained above, the Rule(E)(4)(f) hearing is not intended to resolve the dispute between the parties, but merely to determine if the technical requirements of the Rule were met. Thus, as long as the plaintiff establishes that it has alleged a *prima facie* maritime claim, the defendant is not present in the district, the defendant's property has been restrained in the district and no other statutory bar to the attachment exists, the attachment should be upheld. Id. at 444. Once a plaintiff has established the technical requirements required by Rule B, the burden then shifts to the defendant to establish one of the limited bases for vacatur. Id.

Pagane has carried its burden to demonstrate that this Court's attachment order was validly issued because: (1) the Verified Complaint alleges a valid *prima facie* admiralty claim against the Defendants for breach of a charter party contract (2) the Defendants, who are foreign

7

companies, cannot be "found" within the Southern District of New York; (3) the Defendants have property interest in the funds attached in the district and; and (4) there is no statutory bar to the attachment.

In support of its request that the attachment be vacated, and Plaintiff's Complaint be dismissed as to it, Rias asserts that it was not a party to the contract between Plaintiff and Glingrow and that Plaintiff has not made a prima facie showing of a claim against it. Rias is incorrect on both fronts.

As per Rias' own concession, it paid charter hire due and owing to the Plaintiff on behalf of Glingrow at the direction of Glingrow. Thus, it readily admits that it acted as Glingrow's paying agent as asserted in the Plaintiff's Complaint. While Rias seeks comfort in setting up straw men such as whether Rias is a guarantor of the charter party obligations of Glingrow or an alter ego of Glingrow[1], it is important to note that Pagane has not asserted such claims against Rias. Thus, the Court should not be swayed by such non-issues.

Rias has admitted to acting in a manner wholly inconsistent with sound business practices by making payments on behalf of an entity, Glingrow, with which it claims it is only loosely associated. See Declaration of Sergey Chumak at ¶8. It is questionable exactly what this relationship is since while Rias submitted Declaration claims that the Defendants had a contract that related to the contract between Plaintiff and Glingrow it has deliberately chosen to deprive the Court and Pagane from considering such a contract which is not appended to its papers submitted to the Court. Further, while there is some very vague assertion of a connection to mutual owners (i.e., vessel owners) this is not explained in any detail. Finally, a key point of analysis should be the nature of the payments being made, or received by, Rias that were

---

[1] While not alleged in the Plaintiff's Complaint this basis of liability on the part of Rias is not waived and Plaintiff reserves its right to allege this theory of recovery as against Rias.

8

attached in this district. On this issue, Rias has chosen, yet again, to keep the Court and Pagane in the dark.

It is admitted that on at least one occasion, if not more, Rias made a payment on behalf of Glingrow including the initial charter payment to Plaintiff. *See* Rias Memorandum of Law at 5, Declaration of Sergey Chumak at ¶12. Thus, it is quite reasonable to assume that the funds attached in this district represent exactly what Pagane claims in its Complaint: funds being remitted, or received, by Rias on behalf Glingrow. As such, these funds are properly reached by the Plaintiff's attachment.

Two recent maritime attachment decisions issued by the Court support the Plaintiff's positon. In <u>Essar Int'l, Ltd. v. Martrade Gulf Logistics</u> the Court held that a "[A] plaintiff need not aver an alter-ego relationship in the Complaint for a Rule B attachment to be proper. *Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 527-30 (S.D.N.Y. Aug. 1, 2006) (holding that an analysis of whether reasonable grounds exist for a Rule B attachment is not limited to the allegations in the Complaint). As stated, Defendant Martrade had an interest in the June 1 EFT sufficient to uphold its attachment under Rule B. Accordingly, the requirement that the property attached be that of the named defendant is satisfied." See <u>Essar Int'l, Ltd. v. Martrade Gulf Logistics</u>, 2007 U.S. Dist. LEXIS 61713 (S.D.N,.Y. 2007).

Further, the Court's decision in <u>Chiquita Int'l Ltd. v. M/V Bosse</u>, sustaining a challenged attachment held as follows:

> [The] Second Circuit has held that 'property' should be construed broadly. See *Essar Int'l, Ltd. v. Martrade Gulf Logistics*, No. 07 Civ. 3439, 2007 U.S. Dist. LEXIS 61713, 2007 WL 2456629, at *2 (S.D.N.Y. Aug. 23, 2007)(citing *Winter Storm Shipping, Ltd.*, 310 F.3d at 275). Further, '[u]nder Rule B, it is also possible for more than one party to have an interest in the same property.' Id.
>
> The Court finds that Chiquita/GWF have met their burden under the Supplemental Admiralty Rules and Second Circuit case law of proving a valid prima facie claim.

9

> Further, Chiquita/GWF have demonstrated that Holy House has an interest in the property sufficient to uphold the attachment and that the funds were properly restrained. Holy House's *assertions regarding agency and ownership of the attached funds are unpersuasive. Regardless of Holy House's management role with respect to the other non-party shipowners with whom it does business, it is undisputed that the funds were directed to or from defendant Holy House's bank accounts.* (Blidberg Decl. PP 11-16; Blidberg Reply Decl. PP 3-5.) Holy House's intended use of the funds that were in its account is irrelevant here. Therefore, the restraint of funds was proper under Second Circuit precedent. See Aqua Stoli, 460 F.3d at 436; see also Ronda Ship Mgmt. Inc., 2007 U.S. Dist. LEXIS 72694, 2007 WL 2812897, at *3.

See <u>Chiquita Int'l Ltd. v. M/V Bosse,</u>, 518 F. Supp. 2d 589, 2007 U.S. Dist LEXIS 75726, *10-11 (S.D.N.Y.2007) (emphasis added).

Based on the foregoing, Rias' motion to vacate should be denied as Pagane has satisfied the requirements for issuance of a Rule B attachment.

## POINT II

## RIAS SHOULD BE EQUITABLY ESTOPPED FROM CONTESTING THE CONSENT ORDER AND THE AGREEMENT FOR THE ATTACHED FUNDS TO SERVE AS SECURITY IN LONDON

Rias should be equitably estopped from challenging Pagane's maritime attachment because it unambiguously represented to Pagane that the funds attached in New York would be released and transferred to the United Kingdom to be held as security for Pagane's claims. This was the exact purpose of the Consent Order that was signed by Rias' former attorneys and by the Court. Importantly, by representing that it had agreed to transfer the funds overseas into an escrow account, Rias effectively waived any right that it otherwise had to challenge the attachment of those funds. Stated differently, Rias could not have challenged the attachment of property that had already departed the Southern District of New York by agreement of the parties. The Court is directed to the Declarations of Kevin J. Lennon and Matthew Moore, and

the exhibits attached thereto, which convincingly demonstrate the agreement by the parties in respect of the funds attached in New York.

Under these circumstances, the doctrine of equitable estoppel applies to bar Rias' motion where Pagane justifiably and detrimentally relied upon Rias' representations that the attached funds would be transferred out of New York and held as Pagane's security for its claims which are subject to resolution in London arbitration. This was the *only* reason why Pagane ceased and desisted from attaching additional funds after the entry of the Consent Order.

As was the holding in Marvel Characters, Inc. v. Simon, 310 F.3d 280, 292 (2d Cir. 2002), a party will be estopped from pursuing a claim whenever it misrepresents a fact with knowledge that the other party will rely on it, and where the other party does, in fact, rely on the misrepresentation to its detriment. In respect of equitable estoppel, the Second Circuit held in Marvel Characters, Inc. as follows

> The doctrine of equitable estoppel can be raised "where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 725 (2d Cir. 2001). Under federal law . . . a party can be estopped from pursuing a claim where: (1) the party makes a misrepresentation of fact to another party with reason to believe that the other party will rely on it; (2) the other party relies on the misrepresentation to his detriment. See id.

*Id.* at 292.

As applied to the facts of the facts here, Pagane easily satisfies the elements for equitable estoppel. The Consent Order itself is perhaps the best evidence that Rias had agreed to transfer the attached funds to London to be held as security for Pagane's underlying claims. There is no other logical reason for the Consent Order. It is also telling that Rias' representation was made to Pagane by Rias' former New York attorney and former English solicitor. It is interesting indeed that Rias' motion does not include any submission from these attorneys who are, after all,

11

the ones with direct knowledge of the negotiations with Pagane. Further, it cannot be reasonably disputed that the only reason that Pagane ceased in its efforts to attach additional funds in New York was because of the agreement that the disputed funds would be held as partial security for Pagane's claims and with Rias and/or Glingrow to provide "top off" security at a later date. Pagane detrimentally relied upon Rias' representation when it forewent its rights to continually serve the attachment order until such time as full security was obtained in New York.

For these reasons, Rias' motion to vacate should be denied on the basis of equitable estoppel under circumstances where Rias' representation induced Pagane to stop serving the attachment order in New York at a time when full security might have been obtained.

### POINT III

### RIAS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT IS DEFECTIVE

Rias has purposefully availed itself of the procedure allowed under Supplemental Rule E(4)(f) that calls for an emergency hearing on three days notice, unless other ordered by the Court. Here, the Court issued the Order to Show Cause and granted Plaintiff a hearing within four days. However, this hearing is limited to the inquiry of whether Plaintiff has met the requirements of Supplemental Rule B.

It is entirely altogether another matter whether Plaintiff's Complaint has adequately pled a cause of action against Rias and that question must be resolved under Federal Rule 12(b)(6) and "… the Court [should] not consider such an argument lest Rule 12(b)(6) be completely subsumed by Supplemental Rule E(4)(f)." See Maersk, Inc. v. Neewra, Inc., 443 F. Supp. 2d 519, 531 (S.D.N.Y. 2006).

If Rias wants to pursue the relief allowed under Rule 12(b)(6) it should be required to file a separate motion on notice and to follow the requirements of Local Rule 6.1(b) concerning

briefing time periods. Allowing Rias' motion to dismiss to be considered under the rouse of an emergency application under Rule E(4)(f) is patently improper.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, and upon the Declarations of Kevin J. Lennon and Matthew Moore, Pagane respectfully requests that this Court deny the Motion to Vacate Attachment and Dismiss Complaint filed by Rias Trading.

Dated: January 15, 2008
New York, NY

LENNON, MURPHY & LENNON, LLC
*Attorneys for Plaintiff*
PAGANE MARITIME LTD.

By: _____
KEVIN J. LENNON
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, NY 10170
(212) 490-6050 - phone
(212) 490-6070 - facsimile
kjl@lenmur.com

TO: REED SMITH
*Attorney for Defendants*
599 Lexington Avenue
New York, NY 10022-7650
Attn: Wendy H. Schwartz, Esq,
(212) 521-5400 – phone
(212) 521-5450
WSchwartz@ReedSmith.com

## AFFIRMATION OF SERVICE

I hereby certify that on January 15, 2008 a copy of the foregoing MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO VACATE ATTACHMENT was filed electronically and served by mail on anyone unable to accept electronic filing.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Kevin J. Lennon*
Kevin J. Lennon