UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
PAGANE MARITIME LTD.                                         :
                                                             :
                        Plaintiff,                           :
          v.                                                 :   ECF CASE
                                                             :
GLINGROW HOLDING LTD. and                                    :   07 Civ. 10726 (PKL)
RIAS TRADING,                                                :
                                                             :
                        Defendants.                          :
                                                             X
------------------------------------------------------------

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RIAS TRADING'S
MOTION TO DISMISS COMPLAINT AND VACATE ATTACHMENT**

**REED SMITH LLP**
599 Lexington Avenue
New York, New York
(212) 521-5400

Attorneys for Defendant
Rias Trading

Of Counsel:
Wendy H. Schwartz (WS-1862)

## PRELIMINARY STATEMENT

An invalid *ex parte* attachment Order issued pursuant to Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure ("Rule B") does not become valid just because Plaintiff's counsel says it is valid. Nor does a series of discussions become a binding agreement until final assent is confirmed by both sides, something that did not happen here.

The opposition by Plaintiff Pagane Maritime Ltd. ("Plaintiff" or "Pagane") to the motion by Defendant Rias Trading ("Rias") for vacatur and dismissal ignores the fatal flaw in the Amended Complaint (and the initial Complaint) -- it does not recite a valid *prima facie* admiralty claim against defendant Rias Trading as required by Rule B. The failure to allege such a claim mandates that the attachment of the assets of Rias must be vacated, and the Amended Complaint dismissed as to Rias.

Plaintiff's arguments as to equitable estoppel and defective pleading based on a Consent Order entered in furtherance of negotiations toward an agreement are equally without merit. No agreement was ever reached between the parties regarding the disposition of the attached funds, and Plaintiff shows no detrimental reliance on any such purported agreement.

Bulcom Ltd. ("Bulcom") filed the initial Complaint against Defendants Glingrow Holdings, Ltd. ("Glingrow") and Rias, based on a Charter Agreement with Glingrow alone, and Bulcom obtained an attachment of funds. In furtherance of negotiations aimed at an agreement to resolve this action, counsel for Bulcom and prior counsel for Glingrow and Rias agreed to release the attachment, subject to completing negotiations on a joint letter directing where the funds would go, and possible additional arrangements. No final agreement was reached, and the funds were never released.

Moreover, as negotiations were occurring, Plaintiff took over and continued to prosecute

1

this action, by filing the Amended Complaint, substituting itself for Bulcom, identifying a different amount at issue, obtaining a new attachment order, and attaching additional amounts. The Amended Complaint and new attachment order replace and render the initial complaint and attachment order moot. Moreover, the attachment in favor of Bulcom, and the Consent Order with Bulcom releasing that attachment pending further negotiations on joint instructions as to the funds provide no rights to Plaintiff, and all negotiations -- whether with Bulcom or Plaintiff -- have now ended with no agreement.

Rias thus now returns to this Court seeking the legal relief to which it is (and always was) entitled, namely dismissal of the Amended Complaint for failure to state a claim against Rias, and vacatur of all attachments.[1]

## ARGUMENT

### POINT I

### PLAINTIFF HAS NOT SATISFIED ITS BURDEN OF PROOF UNDER SUPPLEMENTAL ADMIRALTY RULES B AND E(4)(F) AND FAILS TO STATE A CLAIM FOR RELIEF AGAINST RIAS UNDER RULE 12(B)(6)

Contrary to Plaintiff's bald assertions, Pagane does not state a valid prima facie claim against Rias in the Amended Complaint. Rias was not a party to the Charter Agreement sued upon, and thus could not have breached that contract. Indeed, it is not even alleged to have done so. Instead, Pagane claims that Rias is somehow responsible for a breach by Glingrow. However, Pagane fails to identify a legal basis for holding Rias responsible to pay debts allegedly owed by Glingrow.

---

[1] This motion is made by Rias only, to address the defects in Plaintiff's case against Rias as a non-party to the contractual obligations alleged. Defendant Glingrow does not participate in this motion, but reserves all rights to dispute the claims against it.

2

Under Rule E(4)(f), Plaintiff is required to show why the attachment should not be vacated. Plaintiff has not met this requirement. Thus, there is no shift of the burden to Rias to prove equitable grounds for vacatur.

Plaintiff's citation in the last full paragraph of page 2 of its opposition brief to *Transportes Navieros Y Terrestes* serves to highlight Plaintiff's problem: In order to avoid vacatur, Plaintiff must "allege a proper admiralty claim against the [defendant]." *Transportes Navieros Y Terrestes, S.A. de C.V. v. Fairmont Heavy Transport, N.A.*, 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. 2007). But no proper admiralty claim has been alleged against Rias.

Attempting to dodge this issue, on page 5 of its opposition brief, Plaintiff mis-cites the filing and service requirements recited in *Aqua Stoli* – omitting from the first factor the requirement that the plaintiff have a valid prima facie admiralty claim against the defendant. *Aqua Stoli* goes on to state that the court ***must*** vacate the attachment if plaintiff fails to meet its burden. *Aqua Stoli Shipping Ltd. v. Gardner Smith*, 460 F.3d 434, 445 (2d Cir. 2006). That is the situation here. Pagane has not carried its burden of alleging a prima facie admiralty claim against Rias for breach of a charter party agreement, as it is uncontroverted that Rias was not a party to the Charter Party agreement sued upon, and thus could not have breached it.[2]

As recited in Rias' opening brief, Rias desired to charter a vessel to transport grain, and entered into a charter party agreement with Glingrow Holdings, Ltd., a wholly separate agreement from Glingrow's charter party agreement with Bulcom. *See* Chumak Decl. ¶¶ 8, 9,

---

[2] It is also questionable whether Plaintiff Pagane is a party to the Charter Agreement at issue -- the named party is Bulcom, who was the initial plaintiff herein. The Amended Complaint states that Pagane is the real party in interest, notwithstanding that Bulcom is the party recited in the Charter Party sued upon and that Bulcom was the party that invoiced Glingrow. Moreover, the negotiations leading up to the Consent Agreement all reference "Bulcom's claims", as shown by the exhibits to Plaintiff's Declarations. Glingrow, the actual counterparty, reserves all rights in this regard, including to contest Pagane's standing to bring the Amended Complaint and purported rights alleged therein.

3

and 11; *see also* Reply Declaration of Sergey Chumak, dated January 16, 2008 ("Chumak Reply Decl."), Exh. A (attaching a copy of the agreement between Rias and Glingrow). To satisfy its obligations under this contract, Glingrow had entered into a separate Charter Agreement with Bulcom, which is the agreement that Pagane now sues upon.

Rias was invoiced by Glingrow based upon the contract between them, and not based on the Charter Agreement between Glingrow and Bulcom. Chumak Decl. ¶ 12; Chumak Reply Decl. ¶ 4. Rias paid the invoices from Glingrow according to instructions from Glingrow in each individual invoice, which including remitting some funds to Bulcom, Ltd. ("Bulcom"), the original Plaintiff herein, *see* Chumak Decl. ¶ 12; *see also* Chumak Reply Decl., Exh. B, and remitting other funds to Glingrow itself. *See* Chumak Decl. ¶ 12; *see also* Chumak Reply Decl., Exh. B. This does not, and cannot, convert all other funds of Rias into funds being remitted or received by Rias on behalf of Glingrow. Yet this is precisely the baseless, unreasonable assumption that Plaintiffs now asserts as the *sole* basis for attaching the assets of Rias. (Significantly, Plaintiff concedes that it cannot demonstrate that Rias is the alter ego of Glingrow. Pl. Opp. at page 8, second full paragraph.)[3]

Contrary to Plaintiff's argument (*see* Pl. Opp. at 9), *Essar Int'l , Ltd. v. Martrade Gulf Logistics*, 2007 U.S. Dist. LEXIS 61713 (S.D.N.Y. 2007), is inapposite and does not support Plaintiff's position here. In *Essar*, a ***non-party*** made a payment on behalf of the defendant therein purposefully and admittedly to avoid ***an already pending attachment*** that would have reached any payment made by the defendant. The court found that the non-party's payment constituted funds that the defendant had an interest in, because those particular funds were

---

[3] Contrary to Plaintiff's allegation at page 8 of its opposition, Rias has made no admission that "it has acted in a manner wholly inconsistent with sound business practices." However, in any case, even if it had done so, unsound business practice is not a basis for maritime attachment.

directed to pay a debt of the defendant, thus establishing the necessary property interest of the defendant to render the payment attachable under Rule B. *Id.*, 2007 U.S. Dist. Lexis 61713 at 4-5 (S.D.N.Y. 2007). That is completely different from the instant case, where Plaintiff has sued Rias *as a defendant*, seeking to hold it generally responsible for the debts of Glingrow and thereby attaching any funds of Rias that flow through New York, regardless of the destination or beneficiary of those funds. Plaintiff identifies no contractual or common law obligation to hold Rias responsible as a defendant for Glingrow's debt under the Charter Agreement, and expressly disavows pursuing an alter ego theory. Further, it has not been alleged that Glingrow has any interest in the particular assets of Rias that have already been attached.

The only other case cited by Plaintiff for particular support of its claims, *Chiquita Int'l v. M/V Bosse*, 518 F. Supp. 2d 589 (S.D.N.Y. 2007), *see* Pl. Opp. at 9-10, is equally inapposite, as again, the challenge was not whether the plaintiff had a valid prima facie claim, but rather focused on whether or not a defendant had an ownership interest in funds that had already been attached.

## POINT II

### RIAS IS NOT EQUITABLY ESTOPPED FROM CHALLENGING THE ATTACHMENT ORDER

Plaintiff's equitable estoppel argument is equally untenable. Simply saying over and over again that there was a completed agreement between the parties that funds that had been attached would be transferred to an escrow account in London as security for Pagane's arbitration claims against Glingrow does not make it so. The very documents submitted as exhibits to the Declarations in support of Plaintiff's opposition establish that the proposed agreement to transfer the attached funds to an escrow agreement was never completed, not at the

time of the Consent Order, nor thereafter. They also show that neither party acted consistently with the theory that a final resolution had been reached.

### A. The Moore Declaration and Exhibits Do Not Show an Agreement or Detrimental Reliance

Plaintiff submits the declaration of its London counsel, Matthew Moore, who avers that there was a "binding agreement" for all funds held in New York pursuant to Pagane's maritime attachment to be held in an escrow account, pursuant to "*an agreement to be reached.*" But the correspondence he attaches as evidence of any such agreement confirms that (1) the negotiations were in furtherance of an agreement with *Bulcom*, and in fact, no agreement, whether with Bulcom or Pagane, was ever concluded by Rias or Glingrow.

- In Moore Exhibit 1, #3, dated 2/17/07, 16:53 pm, London counsel for Defendants says merely that Plaintiff's London counsel's understanding of what was being proposed is what he understands *Glingrow* will agree to. Clearly, there is no agreement at this point, and no mention of Rias whatsoever.

- In Moore Exhibit 1, #4, dated 12/17/07 17:29 pm, the word "agreed" is used, but there is no context.

- Moore Exhibit 1, #5 only makes clear that as of 12/17/07, 17:58 pm, Defendants' former U.S. counsel was not even "filled in" about the case.

- Moore Exhibit 1, #6 shows that as of 12/17, the parties had not yet started to draft the joint letter for release of funds contemplated by the Consent Order.[4]

- Moore Exhibit 1, #8, dated 12/17/07, 19:52 pm, explicitly refers to a *pending agreement*. Obviously, no agreement had been reached by this point.

- Moore Exhibit 1, #9, dated 12/17/07, 19:55 pm, states that "we will need you to agree" – so there was no agreement at that point, either. More importantly, Plaintiff's counsel reserved rights to re-start service of attachment if funds are not received in London. This shows that there was no final agreement, and that Plaintiff was not engaged in detrimental reliance. This email also recites that funds need to be received by Bulcom (not Plaintiff Pagane), and that, as of 12/17/2007, "[n]o escrow is yet agreed."

---

[4] It should also be noted that this email refers specifically to *Bulcom's* claims against *Glingrow* (and NOT to any claims by Bulcom or Pagane against Rias).

6

- Moore Exhibit 1, #10, dated 12/17/07 at 21:51 pm, simply asks, "Are agreed yet?"

- Moore Exhibit 1, #11, dated 12/18/07 attaches a "standard escrow" agreement for discussion. Note also that this agreement is proposed to be between Pagane and Glingrow, under which Glingrow would have paid money into an escrow account in connection with the dispute under its charter party agreement with Bulcom. This document does not mention Rias at all, let alone obligations of Rias under the Charter Party, or, most importantly, that funds of Rias would be placed into escrow.

- Moore Exhibit 1, #12, dated 12/18/07 at 08:59 am states that Plaintiff's counsel "will review the proposed escrow and get back to you." No agreement yet.

- Moore Exhibit 1, #14, dated 12/18/07 at 19:44 pm merely states "we are *prepared to recommend that our clients agree...*" but does not confirm that there is an agreement.

- Moore Exhibit 1, #15, dated 12/20/2007 discusses additional security desired by Pagane for its claim against Glingrow.

- Moore Exhibit 1, #16, dated 1/3/2008 asks if there is agreement yet on where funds would go.

- Moore Exhibit 1, #17, dated 1/8/2008 indicates that weeks after the Consent Order, there was still no agreement as to the transfer of attached funds to an escrow account.

Far from indicating any agreement, the attachments to Mr. Moore's declaration conclusively show that at no point was any definitive agreement reached regarding the specifics of any transfer of attached funds to any escrow account. Moreover, the only draft of any proposed escrow agreement provides only that Glingrow might consent to put monies into an escrow account, with no mention of Rias. Rias never understood or agreed that *its* attached funds would be held in escrow for claims against Glingrow under any such agreement. Chumak Reply Decl., ¶ 5.

### B. The Lennon Declaration and Exhibits Do Not Show an Agreement or Detrimental Reliance

The declaration submitted by Plaintiff's New York counsel is of no more moment. In Paragraph 12 of his declaration, Lennon declares that Defendants were free of risk of attachment after the Consent Order was submitted. This is false. As admitted by Plaintiff, additional funds

7

were indeed attached after that date, and an attachment Order is still in place, which can, at present, still be served at any time.

Lennon Declaration Paragraphs 13 and 15 recite that Plaintiffs obtained a "fresh PMAG [process of marine attachment and garnishment]" which was served on the same garnishees after the Consent Order was entered, amending the attachment to substitute Pagane for Bulcom Ltd., and that this somehow means the Consent Order is "binding on the interests" of Defendants. Even if the Consent Order is "binding," it only binds the parties pursuant its terms, which requires garnishees to release the attachments once Bulcom, Glingrow and Rias reach a further agreement regarding joint instructions. This never occurred, and the funds were never released.

Once Pagane was substituted for Bulcom in an Amended Complaint (filed after the Consent Order), the initial complaint is a nullity, as is the attachment based thereon. Plaintiff Pagane recognizes this, as it made a point of obtaining a new attachment Order, also after the Consent Order, contradicting the allegation that the Consent Order was a final resolution.

Lennon Paragraph 16 recites that the new PMAG was served on Jan 2, 3, and 4 and that new funds were captured.[5] This is wholly inconsistent with the assertion that Plaintiff somehow relied on the purported agreement to its detriment.

Lennon Exhibit C is merely an exchange between Plaintiff's New York and London counsels, and is not probative.

Lennon Exhibit F, however, is particularly enlightening: As of January 7, 2008, counsel for Plaintiff said that the second attachment "is currently being served." Moreover, Plaintiff's counsel explicitly reserved the right to re-commence service if negotiations on security in

---

[5] Lennon also avers that these funds were released, though how were funds released without court order is unknown to Defendants. Lennon Exhibit E states that banks will not release attached funds without a signed court order.

8

London did not fully secure the claim. Again, this undercuts Plaintiff's claim of detrimental reliance. Further, as of that date he "asks if instructions have been received as to how the funds under attachment are to be disposed of." Thus, there was no agreement even at this late date.

Lennon Exhibit G contains statements by Defendants' former counsel (and, until quite recently, Plaintiff's counsel's law partner) which again offer nothing probative, as it says, "as to what was agreed by them – I have no knowledge."

Equitable estoppel requires justifiable reliance on a misrepresentation in detriment. Here, there is no such detriment. After the Consent Order, Plaintiff obtained a second Order of attachment, continued to hold over $400,000 of Defendants' assets, repeatedly served the "fresh PMAG" upon garnishees, and attached additional funds. That Plaintiff has ceased service of the attachment order and process of marine attachment and garnishment does not establish any detrimental reliance by Plaintiff. Even if the attachment of the property of Rias is vacated, as it should be, Plaintiff will still hold substantial assets of Glingrow, the only entity against which it could possibly allege a *prima facie* claim, and will have an outstanding Order of attachment as to the assets of Glingrow in this District that it can serve, or not, at its option (unless and until challenged by Glingrow, which right is fully reserved by Glingrow).

## POINT III

### PLAINTIFF'S OBJECTION TO RIAS' MOTION TO DISMISS IS UNFOUNDED

Plaintiff lastly argues that Rias' motion to dismiss is defective, and that this hearing is limited to whether Plaintiff has met the requirements of Rule B. Plaintiff would rather have Defendant Rias file a separate motion to dismiss. However, the Order to Show Cause "So Ordered" by this Court explicitly orders Plaintiff to show cause why the Amended Complaint as to Rias should not be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Local Rule 6.1

provides rules for briefing time periods *"unless otherwise ordered by the court . . ."* (emphasis added). Here, the Court has done just that – ordered otherwise. *Maersk*, cited by Plaintiff, is inapposite; there, apparently, no motion to dismiss was made.

## CONCLUSION

For the foregoing reasons, and for those provided in Defendant Rias' opening brief, the Complaint against Rias should be dismissed and all attachment orders vacated as to Rias, along with the granting of costs and disbursements and such other and further relief as the Court deems just and proper.

Dated: New York, New York
January 16, 2008

REED SMITH LLP

By: _____
Wendy H. Schwartz (WHS-1862)
599 Lexington Avenue
New York, NY  10022-7650
Telephone:  212.521.5400
Facsimile:  212.521.5450

Attorneys for Defendant
Rias Trading

10