LENNON, MURPHY & LENNON, LLC
Attorneys for Plaintiff
PAGANE MARITIME LTD.
The Gray Bar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
Telephone:    (212) 490-6050
Facsimile:    (212) 490-6070
Kevin J. Lennon
Charles E. Murphy

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

PAGANE MARITIME LTD.,                              :        07 CV 10726  (PKL)
                                                  :
                    Plaintiff,                    :        ECF CASE
                                                  :
        - against -                               :
                                                  :
GLINGROW HOLDING LTD. and                         :
RIAS TRADING,                                     :
                                                  :
                    Defendants.                   :
-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT RIAS TRADING'S MOTION FOR RECONSIDERATION AND MOTION TO DISMISS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................... i

STATEMENT OF FACTS .......................................................................................................... 1

ARGUMENT.............................................................................................................................. 7

POINT ONE
RIAS'S MOTION FOR RECONSIDERATION SHOULD BE DENIED BECAUSE IT IS
EQUITABLY ESTOPPED FROM CHALLENGING THE ATTACHMENT ................................. 7

POINT TWO
PLAINTIFF ALLEGED A VALID PRIMA FACIE ADMIRALTY CLAIM THAT RIAS
IS LIABLE FOR THE DEBTS OF GLINGROW UNDER THE CHARTER PARTY ................... 9

POINT THREE
ALTERNATIVELY, IF THE AMENDED COMPLAINT IS FOUND DEFICIENT, THE
COURT SHOULD STAY RELEASE OF FUNDS AND GRANT LEAVE TO AMEND .............. 18

POINT FOUR
PURSUANT TO THE PARTIES' AGREEMENT THIS COURT SHOULD ORDER RIAS
TO TRANSFER THE ATTACHED FUNDS INTO AN ESCROW ACCOUNT ............................ 25

CONCLUSION ........................................................................................................................ 25

## PRELIMINARY STATEMENT

Rias's Motion for Reconsideration should be denied for the same reason that its Motion to Dismiss should be denied, *i.e.*, this Court has previously held that Rias is equitably estopped from challenging the attachment. It matters not that Rias now couches its challenge in terms of a motion under Federal Rule of Civil Procedure 12 rather than a motion under Supplemental Admiralty Rule E.

Furthermore, assuming *arguendo* that Rias's promise not to challenge the attachment does not bar it from challenging the sufficiency of the pleadings, Pagane has nevertheless alleged a valid *prima facie* admiralty claim under theories of alter ego, partnership, and joint venturer liability.[1] In this regard, Judge Haight's categorization of Pagane's claim is instructive. The Court noted that "Bulcom further alleged in substance that the corporate relationship between Glingrow and co-defendant Rias, also a foreign company, was such that Rias was liable for the debts of Glingrow under the charter party." *See* Memorandum Opinion and Order entered January 31, 2008 at 2 (hereinafter "Order at ___") attached as Exhibit 1 to Declaration of Kevin J. Lennon (hereinafter "Lennon Decl.") Consequently, Pagane has alleged a valid maritime claim over which this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333.

For the reasons explained more fully below, Rias's motions should be denied.

## STATEMENT OF FACTS

In denying Rias's Motion to Vacate Maritime Attachment, Judge Haight considered all of the revenant facts, which he recited in detail in the "Background" section of his Order. Judge Haight's statement of facts is precisely accurate. It was on these facts that the Court held that "Given the totality of the circumstances revealed by this record, I conclude **without difficulty**

---

[1] In the Amended Verified Complaint Pagane Maritime Ltd. was substituted for Bulcom, Ltd. as plaintiff.

that Rias is equitably estopped from making a motion under Rule E to vacate the Rule B

attachment of its funds." Order at 12 (emphasis added). Reprinted below are Judge Haight's

findings of fact which Plaintiff adopts for the purposes of the instant motion.

This case is typical of many Rule B attachments that come before the Court. Foreign corporations enter into a maritime contract of charter party which provides for arbitration of any disputes in London. The parties instruct solicitors. In order to obtain security for an anticipated (or at least hoped for) arbitration award, the solicitors for the claiming party instruct counsel in this district to file a complaint in admiralty in this Court against the other party and obtain from the Court a writ of maritime attachment under Rule B. The writ is conditioned upon the claim being maritime in nature and the plaintiff's inability to find the defendant within the district for service of process. If those conditions appear from the initial pleadings, a Judge of this Court issues the writ. The writ of maritime attachment extends to all property of the defendant that may be found within the district, including electronic fund transfers taking place between banks. *See Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002). It is customary for counsel for such a plaintiff to cause process of attachment to be served upon a number of New York City banks.

In the case at bar, a foreign company named Bulcom, Ltd. ("Bulcom") filed a complaint in this Court on November 30, 2007. Bulcom's complaint alleged that as disponent owner of the M/V PAGANE, it chartered the vessel to co-defendant Glingrow Holding Ltd. ("Glingrow"), another foreign company, for one time chartered trip via the Black Sea for carriage of a cargo of grain to the port of Aqaba, Jordan. Bulcom further alleged breaches of the charter party by Glingrow resulting in amounts owing to Bulcom. Bulcom further alleged in substance that the corporate relationship between Glingrow and co-defendant Rias, also a foreign company, was such that Rias was liable for the debts of Glingrow under the charter party. Bulcom alleged that the charter party provided for arbitration in London, and that it had commenced arbitration there against Glingrow. The case was assigned on filing to District Judge Leisure. On November 30, 2007 Judge Leisure signed an ex parte Order authorizing the issuance of Process of Maritime Attachment and Garnishment (PMAG") against the property of both Glingrow and Rias. Counsel for Bulcom served the process on several New York City banks. Pursuant to that process, Bulcom succeeded in attaching about $393,000. Counsel for Rias on the present motion say that "$402,736.79 of Defendants' property has been attached by Plaintiff," "some of which belongs to Rias and some of which belongs to Glingrow," and that "even if the attachment of the property of Rias is vacated, as it should be, Plaintiff will still hold over $116,000 of the assets of Glingrow…" Rias's Letter to the Court dated January 15, 2008, at 1, 2. It would thus appear that the major portion of the attached funds are the property of Rias.

2

The attachment of Glingrow's and Rias's funds in New York resulted in an immediate and lively exchange of e-mails between the parties' solicitors in London, looking toward a negotiated release of the funds. Bulcom had instructed the firm of Ince & Co. ("Ince"). Glingrow and Rias had instructed the firm of More Fisher & Brown ("MFB"). The e-mail exchanges took place between Matthew Moore, an Ince partner ("Moore") and Mark Seward, an MFB partner ("Seward"). Copies are attached as exhibits to Moore's declaration dated January 15, 2008 ("Moore Decl.") in opposition to Rias's present motion. I will quote some of them.

In an e-mail sent on December 17, 2007 at 16:47 by Moore to Seward, Moore, responding to proposal by Seward, said:

For the avoidance of any doubt, we set out below our understanding of what is being proposed:

1. The $393,000 caught pursuant to the Rule B will be held in New York pending it being transferred to an escrow account in London. This money will stand as security for our Clients' claim for hire and related expenses, interest and costs.

2. Glingrow will settle their contribution to the cargo shortage claim by making a payment of US$ 76,735 to us or our client (to be confirmed).

3. We will instruct our Clients' New York lawyers to seek to ensure that no further funds are attached or detained pending the escrow being established and the cargo claim being settled.

4. The Rule B will be discontinued/withdrawn when (a) the cargo shortage settlement monies amounting to US$ 76,735 have been paid and (b) the US$ 393,000 has been transferred into escrow in London.

If you are in a position to confirm this approach is in order we will send the requisite instructions to our Clients' lawyers in New York.

Seward responded to Moore in an e-mail sent on December 17 at 16:53:

Yes, I will get a formal OK but that is what I propose and what I understand Glingrow agree.

On December 17 at 17:29, Seward e-mailed Moore:

Yes, agreed: please confirm when Kevin has stopped serving.

3

The only possible reading of this e-mail is that Seward received the express authority of his Clients to agree to the proposed agreement to release the funds attached in New York and transfer them to an escrow in London. "Kevin" in Seward's e-mail is a reference to Kevin J. Lennon, a partner in the New York law firm of Lennon, Murphy & Lennon ("Lennon"). Ince instructed Lennon to represent Bulcom in this district. The phrase "Kevin has stopped serving" reflects the agreement that in consideration of the transfer of the attached funds to escrow in London, Bulcom would cease serving PMAGs upon New York banks in pursuit of Glingrow and Rias funds. Lennon's firm had filed the complaint in this Court and obtained the order of attachment. MFB instructed Thomas Tisdale, a partner in the Tisdale Law Office firm ("Tisdale"), to represent Glingrow and Rias in this district.

Lennon and Tisdale drafted a consent order to be presented to Judge Leisure in New York, and cleared the text with the solicitors for the parties in London. Seward understandably wished the matter to be expedited, since the attached funds belonged to his client Rias. On December 17 at 19:52 Seward e-mailed Lennon directly, with a copy to Moore:

Kevin

No escrow is yet agreed; I can put one over tonight to Ince. However, I do not think it is necessary as we are all grown ups.

My understanding is that we agree the consent order and present it on opening (agreed it is too late today) The money will then make its way to London -- there are no other claimants to our knowledge. It will be held by us or ince pending agreement on escrow terms.

You cease pmags now and agree not to restart them

the rule b is released only when the 50% is received by ince or their clients

In accordance with the agreement negotiated by the parties' London solicitors, Lennon and Tisdale presented a Consent Order to Judge Leisure which the Judge endorsed "So Ordered" on December 20, 2007. The Consent Order reads in its entirety:

It is hereby stipulated and agreed between the parties, by their undersigned attorneys, that the funds that are currently under attachment in this action are to be released. The garnishee bank(s) are herby instructed to release the attached funds pursuant to joint instructions to be provided by letter and signed by the undersigned counsel. The payment of the released funds by the garnishee bank(s) shall not be

4

subject to any further attachment in New York after those funds are released by the garnishee bank(s).

Lennon signed the Consent Order on behalf of plaintiff Bulcom Ltd. Tisdale signed on behalf of defendants Glingrow and Rias. Lennon issued a cease and desist order to the garnishee banks, which had the bargained-for effect of freeing any other Rias funds from attachment in New York.

On December 18 and succeeding days, the solicitors in London considered drafts of escrow agreements, the issue being whether Ince or MFB should hold the funds in escrow after the funds had been released from attachment in New York and transferred to London. Seward did not regard that question as particularly difficult: on December 18 at 08:37 he e-mailed Moore:

This is my standard escrow, please review and approve/comment. If you want a complex one I have one of those too but, frankly, I do not see the point.

As the text of the Consent Order Judge Leisure signed on December 20 reflects, as of that time the London solicitors had not yet worked out the details of the escrow. The holiday season then seems to have intervened. On January 3, 2008 at 14:02 Seward e-mailed Moore:

I refer to our discussions and exchanges and in particular my email sent to you on 2nd. Have you had any thoughts on that? Secondly the monies are now being held as you know in New York and they need to be remitted to an escrow to be held either by you or me. Are we yet agreed on where they will go?

I have no preference and if your clients feel strongly they should be in your hands then I am prepared to agree to that. However I would like to get the money out of New York and the Rule B lifted and my New York lawyers paid so we can move on to chapter 2. I await your constructive comments in relation to the points I have raised on time issues.

It also appears that MFB and Ince were engaged in discussions about the giving of further security in London for the shipowner's claims, and a possible settlement of all disputes arising out of the charter party, short of arbitration. As to the first subject, Moore says:

After the Consent Order was signed correspondence was exchanged in relation to the provision of top-up (additional) security to be given over and above the funds already attached in New York where they were being held pending their transfer to the London escrow account.

5

Moore Decl., 12. as to the second subject, on January 8, 2008 at 06:54 Seward e-mailed Moore:

> I am glad that after a lot of wasted money I have managed to find out via New York what has been going on. I am sure that you will agree, that should not have been necessary. If we cannot settle, and I turn to that now, will you accept an escrow containing the full principal amount of your claim. In a claim for unpaid hire, this seems reasonable.

Seward's January 8 e-mail to Moore goes on to describe the terms of an overall settlement of the disputes arising out of the charter party. However, before any reply by Moore, on January 10 at 06:37 Seward sent him this terse e-mail:

> Matthew
>
> Good morning. Please be aware that I no longer represent Glingrow Holding Ltd. in this matter. Please address all future correspondence to:
>
> ANDREY ASTAPOV
> ASTAPOV LAWYERS (at an address in the Ukraine)
>
> Kind regards
> Mark Seward
> Partner
> MFB Solicitors

Seward could have added "farewell," perhaps that would have been unprofessional.

There was a comparable changing of the guard in New York. Presumably acting on instructions from the newly retained Ukrainian lawyers, the Tisdale firm withdrew as counsel for Glingrow and Rias in the case before this Court, being replaced by the firm of Reed Smith. Reed Smith makes the present motion on Rias's behalf.

\* \* \*

The Reed Smith firm now moves for an order vacating the attachment of Rias's funds and dismissing Pagane's complaint [Pagane having been substituted for Bulcom as plaintiff] against the defendant. It is evident from Rias's submission on the motion that it has no intention of transferring the funds attached in New York to an escrow fund in London as security for Pagane's claims under the charter party. Rias simply wants the funds released to it unconditionally.

Order at 1-8.

## ARGUMENT

### POINT 1

### RIAS'S MOTION FOR RECONSIDERATION SHOULD BE DENIED BECAUSE IT IS EQUITABLY ESTOPPED FROM CHALLENGING THE ATTACHMENT

Judge Haight had no difficulty deciding that Rias was equitably estopped from

challenging the attachment. In denying Rias's Motion to Vacate the Court held as follows:

> The material provisions of the agreement—the promises that were of the essence—were the plaintiff's undertakings to release Rias's attached funds and attach no others, and Rias's representation that the attached funds, once released, would be transferred to a London escrow account to stand as security for an arbitration award. Certainly Rias did not intend for Pagane to continue attaching funds up until the final escrow details were worked out. The Plaintiff at bar has acted in reasonable reliance on Rias's words to its detriment. Rias is equitably estopped from pursuing a Rule B motion to release the attached funds free of any obligation to transfer them to a London escrow fund.

Order at 12. Rias cannot demonstrate that Judge Haight committed error. Moreover, Rias's

Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is nothing

more than a re-packaged version of its Motion to Vacate. Logically, if Rias is estopped from

challenging the attachment under Supplemental Admiralty Rule E should likewise be estopped

from challenging the attachment under Federal Rule of Civil Procedure 12. [2] This is especially

true under the circumstances where Rias's and Glingrow's shared attorneys should have had no

difficulty commencing an investigation of the facts and framing a responsive pleading, which is

the standard under Federal Rule of Civil Procedure E(2)(a). Like Judge Haight, this Court

should not allow Rias to renege on its agreement to transfer the attached fund into an escrow

account, especially because Pagane has stopped serving the writ in reliance upon Rias's promise.

---

[2] Parenthetically, Rias's breach of the agreement to transfer the attached funds to an escrow account to serve as security for Pagane's claims possibly gives rise to a separate admiralty claim. Agreements to settle maritime claims are themselves considered maritime contracts. Judge Chin so held in *Brown v. M.V "GLOBAL LINK,"* 2003 U.S. Dist. LEXIS 14723 at *5; 2004 AMC 1614 (S.D.N.Y. 2003).

7

This Court should view Rias's motions for what they truly are, *i.e.*, a last-ditch effort to escape its obligations by attempting to elevate form over substance.

Reconsideration is governed by Rule 59(e) of the Federal Rules of Civil Procedure and is designed to correct a clear error of law or prevent manifest injustice. Further, reconsideration motions filed pursuant to Local Civil Rule 6.3 are "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *See Allied Maritime, Inc. v. The Rice Corp.*, 361 F. Supp. 148, 149 (S.D.N.Y. 2004), *overruled on other grounds, Aqua Stoli Shipping Co. Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006); *Pasha v. William M. Mercer Consulting, Inc.*, 2004 U.S. Dist. LEXIS 12277, *3 (S.D.N.Y. 2004), *aff'd* 2005 U.S. App. LEXIS 12393 (2d Cir. 2005); and *Maersk v. Neewra, Inc.*, 2006 U.S. Dist. LEXIS 73096, *4 (S.D.N.Y. 2006).

Reconsideration will only be granted where the moving party can demonstrate that there has been newly discovered evidence, the court failed to properly consider the arguments or evidence before it, or the court made an error of law. *See Commer v. McEntee*, 2006 U.S. Dist. LEXIS 82395 (S.D.N.Y. 2006); *see also Degrafinreid v. Ricks*, 452 F. Supp. 2d 328, 331 (S.D.N.Y. 2006). A motion for reconsideration should not be used as an attempt to argue issues previously considered and determined by the court. *See Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998); *see also Koss v. Oneida County Supreme & Family Court*, 2006 U.S. Dist. LEXIS 95068, *5 (S.D.N.Y. 2006). Consequently, Rias is saddled with a "heavy burden of demonstrating that there was a clear error of law or manifest injustice." *See Oxford House v. City of Albany*, 155 F.R.D. 409, 411 (N.D.N.Y. 1994).

In denying Rias's prior motion, Judge Haight cited *Kosalow v. New Rochelle Radiology Assoc.*, 274 F.3d 706, 725 (2d Cir. 2001) and applied the correct standard for equitable estoppel.

8

He "conclude[d] without difficulty" that Rias is equitably estopped from making a motion to vacate the attachment of its funds. In sustaining the attachment, Judge Haight held that Pagane performed its end of the bargain. "It entered into a Consent Order that directed the attached funds 'to be released' and...refrained from seeking further security in New York." Order at 9. The Court further held that "by agreeing through its London solicitors to send the attached funds to an escrow account in London, *Rias implicitly represented that it would not seek by proceedings in this Court to vacate the attachment*. Rias clearly intended and believed that Pagane would rely on that representation." *Id.* (emphasis added). The Court concluded that "Pagane reasonably and justifiably relied upon that representation to its detriment by refraining from further attachments. Thus, all three elements of equitable estoppel are demonstrated by the record. Rias is equitably estopped from making a Rule E motion to vacate of its funds in New York." *Id.* at 10.

## POINT II

### PLAINTIFF ALLEGED A VALID PRIMA FACIE ADMIRALTY CLAIM THAT RIAS IS LIABLE FOR THE DEBTS OF GLINGROW UNDER THE CHARTER PARTY

Succinctly stated, in its amended complaint, Plaintiff alleged that it chartered a vessel to Glingrow and that Glingrow breached the charter party resulting in sums due to Plaintiff. Upon consideration of the amended complaint and the evidence and argument brought before him, Judge Haight found that "*Bulcom further alleged in substance that the corporate relationship between Glingrow and co-defendant Rias, also a foreign company, was such that Rias was liable for the debts of Glingrow under the charter party.*" *See* Order at 2. (emphasis added). Judge Haight acknowledged the Court's admiralty jurisdiction over this dispute stating "it is axiomatic that a district court sitting in admiralty exercises powers akin to those of a court of equity." *Id.* at 9 (internal citation omitted). He further stated in his decision that "Because this case arises

9

within the court's federal admiralty jurisdiction, federal law principles of equitable estoppel govern." *Id.* at 9. In this regard, Rias's argument that Pagane's amended complaint fails to state a cause of action and that the court is without jurisdiction in entirely unfounded.

Rias has renewed its Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) in a second attempt to vacate the attachment. Rias, however, has failed to comment upon the pleading standard set out under Supplemental Rule E(2)(a). To establish a prima facie admiralty claim, Supplemental Rule E requires that a complaint "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." *See* Supplemental Rule E(2)(a). A complaint will not be dismissed for deficiency in pleading "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. For purposes of a Rule 12 motion, all well pleaded allegations are accepted as true, and all inferences are drawn in favor of the pleader." *See EED Holdings v. Palmer Johnson Acquisition Corp.,* 387 F. Supp. 2d 265, 271 (S.D.N.Y. 2004)(internal citations omitted).

In *Transportes Navieros Y Terrestes, S.A. de C.V. v. Fairmount Heavy Transport, N.A.,* 2007 U.S. Dist. LEXIS 50260, 2007 AMC 1993 (S.D.N.Y. 2007), Judge Preska recently summarized that "[a]lthough the Court of Appeals has not stated exactly what a plaintiff must show to make out a '*prima facie* admiralty claim,' many district courts that have examined this issue since [*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.,* 460 F.3d 434, 445 (2d Cir. 2006)] have adopted the 'limited inquiry contemplated by *Aqua Stoli*' and have adopted a basic definition of the term *prima facie.*" *Id. Transportes Navieros Y Terrestes* confirmed that a

10

plaintiff need not prove its case or present evidence. A proper verified complaint is all that is required.

In *Wajilam Exports Singapore Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275 (S.D.N.Y. 2006) the defendant moved to dismiss the plaintiff's complaint pursuant to *inter alia* Rule 12(b)(6) and to vacate maritime attachment on the basis that the complaint against it failed to sufficiently allege an alter ego claim. Judge Lynch converted the motion into a motion for judgment on the pleadings under Rule 12(c) and then denied the motion because plaintiff's allegations were sufficient for the defendant to commence an investigation of the facts and to frame a responsive pleading. He held that this was especially true because the relevant allegations concerned the defendant's own corporate relationships and practices, such that there was no apparent reason why the defendant should have difficulty investigating plaintiff's claims. In rejecting the same argument raised here by Rias, Judge Lynch stated as follows:

> Although the pleading standard is higher in admiralty cases in which an attachment is sought than in other civil cases, [defendant] Via Sistina can hardly argue that it has been unable to commence an investigation of the facts and frame a responsive pleading, because it has already done both. Moreover, the relevant allegations concern [defendant]'s own corporate relationships and practices, so there is no apparent reason why it should have difficulty investigating plaintiff's claims without more specifics than are provided in the Complaint. Accordingly, [defendant]'s argument that plaintiff has failed to meet the standards of Supplemental Rule E(2)(a) is unpersuasive.
>
> [Defendant] next argues that plaintiff's allegations are insufficient to support an alter ego theory of veil-piercing. (D. Mem. at 6-7.) Plaintiff alleges that:
>
> > At all material times there existed such unity and ownership and interest between [ATL-BVI] and [Via Sistina] that no separation exists between them, and [Via Sistina] is the alter ego of [ATL-BVI] in that (a) [ATL-BVI] receives charter hire and freights through the instrumentality, front and conduit of [Via Sistina]; and (b) the monies, funds, and property purporting to belong to [Via Sistina] were and still are intermingled and commingled with the assets of [ATL-BVI].

11

(Compl. P19.) Via Sistina protests that plaintiff "does not specify which charters had hire or freight that was allegedly diverted wrongfully . . .; or exactly which corporate funds have been commingled; or the method of that alleged intermingling." (D. Mem. at 6-7.) This level of specificity, however, is not required to survive a motion for judgment on the pleadings. Plaintiff need only allege sufficient facts to support an inference that Via Sistina has so dominated and disregarded the ATL-BVI's form that ATL-BVI primarily transacted Via Sistina's business rather than its own. It has done so.

Although the Complaint fails to give examples of commingling and diversion of funds, the allegations in the Complaint suggest a regular practice of ATL-BVI's receiving charter hire and freights through Via Sistina, and commingling funds. Plaintiff makes clear that this is its position in the affidavit of Francis McNamara, attached to its opposition to the present motion, which asks the Court to infer from the evidence before it that "the revenues of ATL-BVI are always diverted to [Via Sistina]." (McNamara Aff. P21.) A general practice of diverting revenues and commingling funds is sufficient to show alter ego liability, because it indicates, for financial purposes at least, total disregard of the corporate form. Accordingly, plaintiff's allegations are sufficient, and the motion for judgment on the pleadings will be denied.

*Wajilam Exports Singapore Pte*, 475 F. Supp. 2d at 282-283.

Judge Berman recently reached the same conclusion in *Flora Maritime Ltd. v. Inter Eltra*

*Int'l GMBH*, 06 Civ. 6372 (RMB)(S.D.N.Y. June 21, 2007)(copy attached as Exhibit "2" to

Lennon Decl.) holding as follows:

The Third Amended Verified Complaint cites several grounds for Plaintiff's claim that Defendants are alter egos of Inter Eltra, including, among others, "such unity of ownership" that "the corporate form of [Inter Eltra] has been disregarded"; "overlapping ownership, management, personnel and purposes" such that Inter Eltra and Defendants "did not operate at arms length"; "common addresses [and] common contact information"; and "intermingling of funds." These factors are "among the list of factors a court may consider when alter ego status has been pled, and are sufficient to state a valid admiralty claim." *SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, 06 Civ. 15375, 2007 U.S. Dist. LEXIS 18562, at *11 (S.D.N.Y. Mar. 15, 2007); *see also Wm. Passalacqua Builders v. Resnick Developers*, 933 F. 2d 131, 139 (2d Cir. 1991). Defendants "can hardly argue that [they] ha[ve] been unable to commence an investigation of the facts and frame a responsive pleading, because [they] ha[ve] already done both." *Wajilam Exp. (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 282 (S.D.N.Y. 2006).

*Flora Maritime Ltd.* at 5. Citing *Wajilam*, the *Flora Maritime* court held that "In conformity

with the requirements of Rule B and E, Plaintiff has 'allege[d] sufficient facts to support an

inference" of alter ego liability. *Wajilam Exports Singapore Pte*, 475 F.Supp. 2d at 283.'" As

such, the *Flora Maritime Ltd.* court upheld the maritime attachment.

*Essar Int'l Ltd. v. Martrade Gulf Logistics, FZCO*, 07 Civ. 3439 (WHP), 2007 U.S. Dist.

LEXIS 61713, 2007 AMC 2017 (S.D.N.Y. Aug. 23, 2007) is also instructive. In *Essar*, Judge

Pauley held that a plaintiff need not aver an alter-ego relationship in the complaint for a Rule B

attachment to be proper in the circumstances where the primary defendant holds a property

interest in funds being paid to or received by the second defendant. More specifically, the *Essar*

court held as follows:

> Rule B limits attachable property to that of a named defendant. "Modern
> conceptions of fairness ... dictate that actual notice be given to persons known to
> claim an interest in the property that is the subject of the action where that is
> reasonably practicable." *Winter Storm*, 310 F.3d at 269; *see also DS Bulk*, 2006
> U.S. Dist. LEXIS 39242, 2006 WL 1643110, at \*2 ("The language of
> Supplemental Rule B clearly anticipates that only a 'defendant' will be subject to
> an order of attachment."); T & O Shipping, 2006 U.S. Dist. LEXIS 88153 at \*12,
> 2006 WL 3513638, at \*4 ("Rule B limits the scope of an attachment to a
> defendant who is named in the verified complaint"). Marlog argues that, because
> Essar did not name it as a defendant or allege an alter-ego relationship between it
> and Martrade in the Complaint, it has failed to satisfy the technical requirements
> of Rule B. This Court disagrees.

> A plaintiff need not aver an alter-ego relationship in the Complaint for a Rule B
> attachment to be proper. *Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 527-
> 30 (S.D.N.Y. Aug. 1, 2006) (holding that an analysis of whether reasonable
> grounds exist for a Rule B attachment is not limited to the allegations in the
> Complaint). As stated, Defendant Martrade had an interest in the June 1 EFT
> sufficient to uphold its attachment under Rule B. Accordingly, the requirement
> that the property attached be that of the named defendant is satisfied.

*Essar Int'l Ltd.*, 2007 U.S. Dist. LEXIS 61713 at \*7.

In *Chiquita Int'l Ltd. v. M/V Bosse*, 518 F. Supp. 2d 589 (S.D.N.Y. 2007), this Court

reached the identical conclusion as *Essar* and held as follows:

13

[The] Second Circuit has held that 'property' should be construed broadly. See *Essar Int'l, Ltd. v. Martrade Gulf Logistics*, No. 07 Civ. 3439, 2007 U.S. Dist. LEXIS 61713, 2007 WL 2456629, at *2 (S.D.N.Y. Aug. 23, 2007)(citing *Winter Storm Shipping, Ltd.*, 310 F.3d at 275). Further, '[u]nder Rule B, it is also possible for more than one party to have an interest in the same property.' *Id.*

The Court finds that Chiquita/GWF have met their burden under the Supplemental Admiralty Rules and Second Circuit case law of proving a valid prima facie claim. Further, Chiquita/GWF have demonstrated that Holy House has an interest in the property sufficient to uphold the attachment and that the funds were properly restrained. Holy House's assertions regarding agency and ownership of the attached funds are unpersuasive. Regardless of Holy House's management. role with respect to the other non-party shipowners with whom it does business, it is undisputed that the funds were directed to or from defendant Holy House's bank accounts. (Blidberg Decl. PP 11-16; Blidberg Reply Decl. PP 3-5.) Holy House's intended use of the funds that were in its account is irrelevant here. Therefore, the restraint of funds was proper under Second Circuit precedent. *See Aqua Stoli*, 460 F.3d at 436; *see also Ronda Ship Mgmt. Inc.*, 2007 U.S. Dist. LEXIS 72694, 2007 WL 2812897, at *3.

*Chiquita Int'l Ltd.*, 518 F. Supp. 2d at 594.

Still further, the case of *Maritime Ventures International v. Caribbean Trading & Fidelity, Ltd.*, 689 F. Supp. 1340 (S.D.N.Y. 1988) undercuts Rias's argument that this case should be dismissed for lack of subject matter jurisdiction. In *Maritime Ventures International*, the plaintiff vessel owner sued the vessel's charterer and defendants whom the plaintiff alleged were liable for the charterer's breach of the charter party. Specifically, the central issue in the case was whether the charter bound defendants other than the charterer. The plaintiff alleged that "the Court should disregard the corporate form of charterer and hold the other defendants individually liable both on the charter party and for fraud." *Id.* at 1347. The plaintiff alleged that the charterer was "merely one member in a joint venture consisting of all the named defendants" and that "under this joint venture theory, each member of the venture would be liable to the charter agreement." *Id.* The defendant Douglas, who was not a party to the charter party, moved to dismiss the complaint pursuant to Rule 12(b)(6) and to vacate the attachment.

14

Judge Connor denied the motion to dismiss on the basis that the plaintiff's joint venturer theory

against Douglas was a maritime claim over which the Court had admiralty jurisdiction. The

*Maritime Ventures International* court held as follows:

> Douglas claims that the Court lacks subject matter jurisdiction over the claims
> asserted against him. Douglas contends that he was not involved in the charter of
> the Senhorita, and was unaware of the actions taken by Matthew and de Paulo in
> this regard until long after the fact. He claims that his actions were unconnected
> with the maritime aspects of the transaction, and therefore, that admiralty
> jurisdiction is lacking.
>
> Federal subject matter jurisdiction is determined by the face of the well-pleaded
> complaint, *Phillips Petroleum Co. v. Texaco Inc.,* 415 U.S. 125, 127-28, 39 L. Ed.
> 2d 209, 94 S. Ct. 1002 (1974); *Gibson v. Firestone,* 741 F.2d 1268, 1270 (11th
> Cir. 1984), cert. denied, 469 U.S. 1229, 84 L. Ed. 2d 367, 105 S. Ct. 1230 (1985),
> and all well-pleaded allegations must be taken as true for purposes of determining
> the existence of federal jurisdiction. *Gibson,* 741 F.2d at 1270 (*citing Goosby v.
> Osser,* 409 U.S. 512, 521 n.7, 35 L. Ed. 2d 36, 93 S. Ct. 854 (1973)); *see
> Molyneux v. Arthur Guinness and Sons, P.L.C.,* 616 F. Supp. 240, 243 (S.D.N.Y.
> 1985) ("To maintain an action in federal court, the plaintiff must allege facts
> which, if taken as true, are sufficient to support federal jurisdiction over the
> claims."). A dismissal for lack of subject matter jurisdiction requires that the
> complaint be patently without merit. *Duke Power Co. v. Carolina Environmental
> Study Group, Inc.,* 438 U.S. 59, 70, 57 L. Ed. 2d 595, 98 S. Ct. 2620 (1978); *Falls
> Riverway Realty v. City of Niagara Falls,* 754 F.2d 49, 54 n.3 (2d Cir. 1985);
> *Morabito v. Blum,* 528 F. Supp. 252, 260 (S.D.N.Y. 1981).
>
> In the present case, plaintiff has alleged that Douglas is liable on the Senhorita
> contract due to his domination of Caribbean. Since a contract for the hire of a
> vessel is within the Court's admiralty jurisdiction, *Kossick v. United Fruit Co.,*
> 365 U.S. 731, 735, 6 L. Ed. 2d 56, 81 S. Ct. 886 (1961); *Kirno Hill Corp. v. Holt,*
> 618 F.2d 982, 984 n. 1 (2d Cir. 1980), plaintiff's allegations provide a basis for
> the exercise of subject matter jurisdiction over the claims against Douglas.
> Douglas has not shown that these allegations are completely meritless, and, as the
> authorities cited above make clear, these allegations must be taken as true.
> Therefore, the motion to dismiss for lack of subject matter jurisdiction is denied.

*Maritime Ventures International,* 689 F. Supp. 1340, 1347-1348 (S.D.N.Y. 1988). Of note, the

*Maritime Ventures* court preserved the attachment of the defendants' assets while at the same

time it granted leave to amend the complaint pursuant to Rule 15(a). Specifically, the court

permitted the plaintiff to amend the complaint to assert a new theory under joint venturer liability, to add additional defendants, and to cure certain deficiencies. *Id.* at 1357-1358.

Consistent with the holdings in *Wajilam Exports Singapore Pte. Ltd.*, *Flora Maritime Ltd.*, *Essar Int'l Ltd.*, *Chiquita Int'l Ltd.*, and *Maritime Ventures Int'l*, Pagane has alleged a valid prima facie admiralty claim. Specifically, that "Rias ... was at all material times the alias, partner, joint venturer and/or paying, or receiving, agent of the Defendant Glingrow." *See Amended Complaint at ¶ 4.* The Amended Complaint also alleged that "Defendant Rias acts as paying agent and/or receiving agent, or arranges for other non-parties to satisfy the debts and obligations of Defendant Glingrow, and/or receive payments being made to Defendant Glingrow. *Id. at ¶ 15.* The Amended Complaint further alleged that "Although Rias was not named in the charter party, and had no formal relationship to the charter of the M/V "PAGANE" it paid initial hire owing to Plaintiff from Glingrow. *Id. at ¶ 16.* The Amended Complaint went further by alleging that "It is not common practice in the maritime industry, nor any other business, for an independent company to pay another company's debt, where it has no formal relationship to the underlying contract." *Id. at ¶ 17.*

It should not be overlooked that Judge Haight, a noted maritime jurist, had **no difficulty** finding that the complaint alleged in substance that the corporate relationship between Glingrow and co-defendant Rias was such that Rias was liable for the debts of Glingrow under the charter party. Based upon this finding of fact, Rias's suggestion that the complaint fails to satisfy the pleading requirement of Admiralty Rule E(2)(a) is without merit. This is especially the case where the relevant allegations concerned Rias's own corporate relationships and practices vis-à-vis Glingrow. Rias's and Glingrow's express agreement to post security for Pagane's claims amply demonstrates that Rias had no such difficulty in understanding.

16

Importantly, Rias, via its London solicitor, agreed to post "an escrow containing the full principal amount of your [Pagane's] claim. In a claim for unpaid hire, this seems reasonable." *See Order discussed supra at 6.* Moreover, both defendants have throughout been represented by the same attorneys, firstly MFB, and then once Rias set about to renege on the settlement of the New York action/security issues, by Reed Smith. Additionally, one of the bases for Pagane's contention that Rias should be held liable under the charter party is on the basis that after Glingrow entered into the charter with Plaintiff, it immediately entered into a back-to-back sub-charter with Rias with identical terms, including an identical rate, which shows that Rias and Glingrow do not operate at arm's length since Glingrow received no consideration for this further charter. Thus, this is clearly not a situation where Rias has been confused by Pagane's allegations such that it can neither investigate nor plead its defense thereto.

Furthermore, the Court may properly find, based in part upon Judge Haight's previous, findings, that Glingrow has a property interest in the Rias funds restrained in New York. Rias has not denied Pagane's allegation that the attached funds were being paid to satisfy Glingrow's debts. Certainly, as a party to the restrained remittances, it is vested with knowledge regarding the transactions for which the remittances were being made. In his decision, Judge Haight found Rias to have breached its agreement that all attached funds would be transferred to a London escrow account as security for Pagane's claims against Glingrow. By so agreeing, Rias tacitly conceded that Glingrow has a property interest in those funds and that it and Glingrow do not operate at arm's length. These are the only logical conclusions unless one were to assume, perhaps absurdly so, that Rias agreed to voluntarily post security in favor of an unrelated company on an unrelated contract claim.

17

Rias repeatedly cites your Honor's recent decision in *Naias Marine S.A. v. Trans Pacific Carriers Co. Ltd.*, 07 Civ. 10640 (PKL), 2008 U.S. Dist. LEXIS 2438 (S.D.N.Y. Jan. 10, 2008). While Pagane takes no issue with the proposition that a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists, it is noteworthy that the facts of *Naias Marine* are distinguishable from the facts in this case. In *Naias Marine*, the Court dismissed the complaint for lack of admiralty jurisdiction because plaintiff's claim for *legal defense costs* did not constitute a valid prima facie admiralty claim. As such, in *Naias Marine* the plaintiff failed to demonstrate that maritime or admiralty jurisdiction existed under Federal Rule of Civil Procedure Rule 9(h) or 28 U.S.C. § 1333. The maritime attachment was, therefore, vacated due to lacking maritime claim Rule B prerequisite.

Unlike *Naias Marine*, in this case Pagane has alleged that the corporate relationship between Glingrow and Rias was such that Rias was liable for the debts of Glingrow under the charter party based on theories of *inter alia* alter ego liability, partnership liability, and joint venturer liability. These allegations suffice to confer the Court with admiralty jurisdiction. *See, e.g., Tide Line v. Eastrade*, 2007 AMC 252, 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. 2006); *Ullises Shipping Corp. v. FAL Shipping Co. Ltd.*, 2006 AMC 1094, 415 F. Supp.2d 318 (S.D.N.Y. 2006). This Court has subject matter jurisdiction because Pagane has alleged that Rias and Glingrow are liable under the governing charter party and because pursuant to 28 U.S.C. §1333 district courts have original jurisdiction over any case of admiralty or maritime jurisdiction.

## POINT III

## ALTERNATIVELY, IF THE AMENDED COMPLAINT IS FOUND DEFICIENT, THE COURT SHOULD STAY RELEASE OF FUNDS AND GRANT LEAVE TO AMEND

18

Rias also cites *Tide Line v. Eastrade*, 2007 AMC 252, 2006 U.S. Dist. LEXIS 95870

(S.D.N.Y. 2006), upon which it relies heavily. While *Tide Line* is instructive, it is

distinguishable from this case. Additionally, *Tide Line* does not stand for the proposition

advanced by Rias because in *Tide Line* Judge Wood ultimately granted the plaintiff leave to file

an amended complaint to plead alter ego with greater particularity and she preserved the

attachment over defendant's funds. Stated differently, while the defendant in *Tide Line*

technically won the battle by demonstrating that the complaint failed to comply with the pleading

requirements of Rule E(2)(a), it was the plaintiff who won the war by filing an amended

complaint, which cured all pleading deficiencies, and by maintaining the attachment.

Similar to this case, in *Tide Line*, a ship owner sued a ship charterer and alleged alter ego

liability against a company whom had made hire payments on charterer's behalf. Plaintiff

obtained an ex parte attachment order and attached the assets of the alter ego. However, unlike

this case, where Pagane has expressly alleged that Rias was a partner, joint venturer, alias, and/or

paying agent of Glingrow, in *Tide Line* the plaintiff's only allegation in the original complaint

was that of alter ego liability. In *Tide Line*, the phrase "alter ego" never once appeared in the

original complaint. Nevertheless, the court preserved the attachment over defendant's funds.

The issue before Judge Wood was whether the plaintiff had adequately shown that that it had a

"valid prima facie admiralty claim" in accordance with *Aqua Stoli Shipping Ltd. v. Gardner*

*Smith*, 460 F.3d 434 (2d Cir. 2006). Judge Wood noted as follows:

> [Plaintiff] Tide Line's sole allegation against Transclear, in its Verified
> Complaint, is that: "Defendant Transclear acts as paying agent, or arranges for
> other nonparties to satisfy the debts and obligations of Defendant Eastrade." In its
> submissions opposing Transclear's motion to vacate the attachment, Tide Line
> argues that it has a valid *in personam* maritime claim against Transclear, on the
> sole basis that Transclear is, allegedly, the alter ego of Eastrade Inc., against
> whom it is undisputed that Tide Line has a valid maritime claim. Tide Line
> argues that its Complaint adequately alleges a claim against Transclear based on

19

alter ego liability, and that its other submissions (and its oral argument) in connection with the motion to vacate the attachment further allege and support such an alter ego claim. Furthermore, Tide Line asks that, if the Court finds that the Verified Complaint does not adequately allege that Transclear and Eastrade Inc. are alter egos, the Court allow Tide Line to submit an amended complaint containing additional allegations as to Transclear's status as an alter ego of Eastrade Inc., based on new information discovered since the filing of the Complaint; Tide Line also requests that the release of the attached funds be stayed until the Complaint is amended and a new writ is served upon the garnishee bank, because Tide Line claims it will suffer great prejudice if the funds are released.

*Tide* Line, 2007 AMC at 264, 2006 U.S. Dist. LEXIS 95870 at *31-32. The *Tide Line* court , citing *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir. 1991), explained that the Court of Appeals for the Second Circuit had enumerated ten factors that would tend to show that defendant was a dominated corporation. The *Tide Line* court recognized that applying such factors - or any other pertinent factors - to the infinite variety of situations that might warrant disregard of the corporate form is not an easy task and differs with the circumstances of each case.

The *Tide Line* court held that the complaint did not, in and of itself, state a prima facie admiralty claim. The court arrived at its determination because "[f]irst, and most obviously, Tide Line does not use the phrase 'alter ego' in its Verified Complaint." *Tide Line*, 2007 AMC at 267, 2006 U.S. Dist. LEXIS 95870 at *42. Furthermore, "although a court may find that, where 'alter ego' 'is not specifically pled, the factual allegations [in a complaint] may support the maintenance of a claim based on an alter ego theory of liability,' *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 899 (S.D.N.Y. 1999), the sole allegation that an entity is a 'paying agent, or arranges for other non-parties to satisfy the debts and obligations of' another entity, does not suffice to allege a prima facie claim of alter ego liability." *Tide Line*, 2007 AMC at 267, 2006 U.S. Dist. LEXIS 95870 at *42. More importantly, however, Judge Wood commented that Tide Line had "provided further allegations (and evidence) pertaining to its

20

claim that Transclear is the alter ego of Eastrade Inc. in its submissions in connection with the motion to vacate the attachment" and "[i]n addition, Tide Line asks that [pursuant to Federal Rules of Civil Procedure 15(a)] the Court allow Tide Line to submit an amended complaint containing these additional allegations as to Transclear's status as an alter ego of Eastrade Inc." which included theories of alter ego, partnership and joint venture liability. *Id.* Recognizing Rule 15(a)'s "lenient standard" for leave to amend, Judge Wood granted Tide Line's request for leave noting that the Second Circuit has held that a Rule 15(a) motion 'should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.' *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603-04 (2d Cir. 2005)(*quoting Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987)). Most significantly, in *Tide Line* Judge Wood preserved the attachment over the defendant's funds based upon the valid prima facie admiralty claim contained in the Proposed Amended Complaint, which complaint had cured the deficiencies in the original complaint. The *Tide Line* court concluded as follows:

> The question at this point is whether the Ex Parte Attachment Order should be vacated because the original Verified Complaint does not sufficiently state a prima facie alter ego claim against Transclear, or whether it should not be vacated because Tide Line's proposed amended allegations sufficiently state a prima facie alter ego claim against Transclear; furthermore, if the Attachment Order is vacated, the Court must consider whether the release of the attached funds should be stayed, as requested by Tide Line, until the Complaint is amended, a new Ex Parte Attachment Order is issued, and a new writ is served upon the garnishee bank. If the Court were to vacate the attachment now, after granting Tide Line's request to amend its Complaint, the entire proceedings would almost certainly be quickly repeated. It seems that the interests of judicial efficiency would counsel in favor of keeping the attachment in place, in light of the amendments to the Verified Complaint.

*Tide Line*, 2007 AMC at 270, 2006 U.S. Dist. LEXIS 95870 at *48-49. Thus, *Tide Line* stands for the proposition that a plaintiff should be allowed, where the interests of justice so require, to

21

amend a defective complaint to state a valid prima facie admiralty claim and that the court should, given the appropriate circumstances, stay the release defendant's attached property.

Pagane's amended complaint does not suffer from the same deficiencies as the complaint in *Tide Line*. To wit, unlike *Tide* Line, where the *only* allegation was that one defendant served as the "paying agent" of the other, here Pagane has specifically alleged theories of partnership liability, joint venturer liability, and that Rias is the alias of Glingrow. Judge Haight understood the amended complaint to state a valid claim when he held that "Bulcom further alleged in substance that the corporate relationship between Glingrow and co-defendant Rias, also a foreign company, was such that Rias was liable for the debts of Glingrow under the charter party." *See* Order at 2.

Notwithstanding the foregoing, should this Court decide that Pagane's Amended Complaint is defective then Pagane requests leave pursuant to Federal Rule of Civil Procedure 15(a) to file a Second Amended Complaint. *See* Proposed Second Amended Verified Complaint attached as Exhibit "3" to Lennon Declaration. Pagane further requests that an order vacating attachment be stayed until such time as the Verified Second Amended Complaint is filed and an amended attachment order issued. Specifically, should it be necessary, Plaintiff will allege in its Verified Second Amended Verified Complaint as follows:

• Defendant Rias was the putative vessel sub-charterer under the terms of a charter party dated October 17, 2007 from Defendant Glingrow, as disponent vessel owner, to Defendant Rias.

• Clause 4 of the Glingrow-Rias charter party requires Defendant Glingrow to pay Rias for the use and hire of the Vessel at the rate of $60,000 per day, pro rata, including overtime, payable in advance every 15 days. The Glingrow – Rias charter party is on identical terms to the Pagane – Glingrow charter party. Upon information and belief, Rias did not receive any consideration from the sub-charter party with Rias since it was obliged to pay to Pagane the exact same rate of hire. The Glingrow–Rias charter party does not indicate that Glingrow received any commission, or other consideration, under the charter party.

22

• Clause 35 of the Glingrow– Rias charter party requires hire to be paid (by Rias) to Owner's (Glingrow) bank account. Clause 35 further provides that Charterers (Rias) will not agree to assignment of hire, monies due under the charter party or the charter party itself in "any circumstances." However, as admitted by Defendant Rias in the Reply Declaration of Sergey Chumak dated January 16, 2008 it received, and paid, invoices from Glingrow for payment of hire due under the Glingrow – Rias charter that called for payment to be made to Bulcom Ltd. and not Glingrow Holding Ltd.

• The payments made by Rias to a party as directed by Glingrow on its invoices demonstrates that the Pagane – Glingrow charter party was used merely to insulate Rias, as the actual vessel charterer for the purposes of shipping cargo for its account, from Pagane by using Glingrow as an intermediary charterer.

• Defendant Glingrow is merely a shell-corporation through which Defendant Rias conducts its business of chartering vessels and shipping cargo, or vice versa.

• Defendants share, or shared, common ownership and operation.

• Defendant Glingrow has no bona fide separate, independent identity from Defendant Rias.

• Defendant Glingrow is owned, operated and controlled by Defendant Rias.

• Defendants are owned, operated, controlled and managed as a single economic enterprise ultimately controlled by common and overlapping shareholders, directors, officers, and/or managers.

• Defendant Glingrow acts as the chartering arm of Defendant Rias and these companies are effectively one and the same.

• Based on the foregoing, as well as other activities, the Defendants should be considered as a single economic unit with no corporate distinction between or among them, rendering each liable for the debts of the other, and all assets of each Defendant susceptible to attachment and/or restraint for the debts of Glingrow to Pagane.

• By virtue of the foregoing, Defendant Rias is properly considered a party to the Pagane – Glingrow charter party as the alter ego, alias, partner and/or joint venturer, of Defendant Glingrow.

• Defendant Rias is the alter ego of Defendant Glingrow because its so dominates and disregards Glingrow's corporate form to the extent that Rias is actually carrying on Glingrow's business and operations as if the same were its own, or vice versa.

• In the alternative, Defendants Glingrow and Rias are partners and/or are joint venturers.

23

• In the further alternative, Defendants are affiliated companies such that Glingrow is now, or will soon be, holding assets belonging to Rias, or vice versa.

• Upon information and belief, Defendant Rias acts as paying agent, and/or receiving agent, or arranges for other non-parties to satisfy the debts and obligations of Defendant Glingrow, and/or receive payments being made to Defendant Glingrow. To wit, Rias paid Glingrow's debts under the Pagane – Glingrow charter party on at least three occasions and, upon information and belief, the funds belonging to Rias which have been attached in this action were payments being made to satisfy Glingrow's debts.

As in *Tide Line*, additional facts and evidence have developed since Pagane filed its complaint and amended complaint. Rias has since produced (1) the Glingrow-Rias charter party, which, unsurprisingly, is identical in all respects (including rates) to the Pagane-Glingrow charter party, and (2) the Glingrow invoices to Rias that demonstrate that the Pagane – Glingrow charter party was used merely to insulate Rias, as the actual vessel charterer for the purposes of shipping cargo for its account, from Pagane by using Glingrow as an intermediary charterer. These newly discovered facts support the allegation that the corporate relationship between Glingrow and Rias is, or was, such that Rias may properly be held liable for the debts of Glingrow. These facts are specifically alleged in the Proposed Second Amended Verified Complaint. Consequently, Pagane has sufficiently alleged a valid prima facie maritime claim against both Rias and Glingrow such that the attachment should be sustained.

Obviously, many of the documents required to prove other elements of Pagane's claims are solely in the control of Rias and Glingrow. Discovery on these issues may be necessary. With respect to summary judgment and motions on the pleadings, courts have "required that the party asserting jurisdiction be permitted discovery of facts demonstrating jurisdiction, at least where the facts are peculiarly within the knowledge of the opposing party." *See Kamen v. American Telephone & Telegraph Co.*, 791 F.2d 1006, 1011 (2d. Cir 1986); *Brocsonic Co. Ltd. v. M/V "Mathilde Maersk"*, 120 F. Supp. 2d 372, 374 (S.D.N.Y. 2000). Given what is already

24

known regarding Rias's penchant for paying Glingrow's debts, discovery is appropriate on subjects such as the relationship between Rias and Glingrow, especially in light of Rias's suggestion that the relationship is defined by a contract that has never been produced.

## POINT IV

## PURSUANT TO THE PARTIES' AGREEMENT THIS COURT SHOULD ORDER RIAS TO TRANSFER THE ATTACHED FUNDS INTO AN ESCROW ACCOUNT

Judge Haight found that Rias breached its to transfer attached funds to a London escrow agreement. However, as Part I Judge he was concerned solely with Rias's emergency and expedited motion to vacate the attachment of its funds and his Order stopped short of compelling Defendants to agree to transfer the to London. Pagane now renews its request that the Court issue an order, consistent with the parties' agreement, to transfer the attached funds to a London escrow account held by Ince & Co. to serve as security for Pagane's arbitration claim.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons Pagane respectfully requests that this Court deny the Rias's Motion for Reconsideration and Motion to Dismiss.

Dated: March 13, 2008
New York, NY

LENNON, MURPHY & LENNON, LLC
Attorneys for Plaintiff

By:

Charles E. Murphy
Kevin J. Lennon
420 Lexington Avenue, Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – facsimile
cem@lenmur.com
kjl@lenmur.com

TO:    REED SMITH
       *Attorney for Defendants*
       599 Lexington Avenue
       New York, NY 10022-7650
       Attn: Wendy H. Schwartz, Esq,
       (212) 521-5400 – phone
       (212) 521-5450 – fax
       wschwartz@ReedSmith.com

## **AFFIRMATION OF SERVICE**

I hereby certify that on March 13, 2008 a copy of the foregoing MEMORANDUM OF

LAW IN OPPOSITION TO MOTION FOR RECONSIDERATION AND MOTION TO

DISMISS was filed electronically and served by mail on anyone unable to accept electronic

filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's

electronic filing system or by mail to anyone unable to accept electronic filing. Parties may

access this filing through the Court's CM/ECF system.

Kevin J. Lennon